(Nos. 41463, 41464 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* BARBARA MITCHELL *et al.*, Appellants.

*Opinion filed March 24, 1970.*

Ward, J., took no part.
Schaefer, J., dissenting.

Geter & Geter, of Chicago, (Howard D. Geter, Sr. and Howard D. Geter, Jr., of counsel,) for appellants.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane and Michael Stevenson, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Kluczynski delivered the opinion of the court:

Separate appeals by the defendants, Barbara Mitchell and Albert A. Wyatt, from judgments of conviction entered in the circuit court of Cook County have been consolidated. Each defendant was indicted for the offense of knowingly owning or possessing instruments and apparatus by means of which bets and wagers were made, recorded, and registered, in violation of section 28—1(a)(5) of the Criminal Code. (Ill. Rev. Stat. 1965, ch. 38, par. 28—1(a)(5).) While the convictions were based upon separate occurrences, the facts in the two cases are similar and the legal issues presented are identical.

In each case incriminating evidence was seized by police officers acting under search warrants that had been issued on affidavits which, in the respects here involved, were substantially identical. In each case the defendant moved to suppress the evidence that had been seized, on the ground that there was not probable cause for the issuance of the warrant. Evidence was received, and the motion was denied. Each case was then submitted on a stipulation that the evidence heard upon the motion to suppress would be the evidence upon the trial, and each defendant was found guilty.

In each of these cases the search warrant was issued upon the affidavit of a police officer who stated that he had received information from a reliable informer whose previous disclosures had led to a number of arrests or convictions; that the informer had identified a telephone number which he said he called to place bets, and that the telephone company had supplied the name and address of the subscriber of the designated number, which address was set out in the affidavit. Each affidavit then stated that the affiant dialed the number, handed the telephone to the informer, and that the affiant heard the informer place one or more bets on named horses in specified races. Each affidavit stated that the informer said that when he was handed the telephone it was answered by a person unknown to him, with whom he placed his bets. The affidavits stated that the informer said that after the bets were placed, their unknown recipient inquired whether that was all, and the affiant stated that he heard the informer say, "I may call you later," or "That's all for now," or make some similar response.

The defendant Mitchell testified that she had not received a telephone call in which a $5 bet was placed on Latin Liner to win in the first race at Hawthorne, as specified in the affidavit; that she had not been previously arrested and had not ever accepted a bet on a horse. She also testified that a bookmaker with whom she had placed bets was in her

apartment when the police entered and that he attempted to leave by the back door of her apartment as the officers were entering the front door. An officer testified that the only other person present in her apartment was an old man who was not arrested. The officer whose affidavit had led to the search of her apartment testified that the informer did not give him the name of the person who answered the phone, although the officer had asked for this information. The officer did not ask nor was he told where the informer had paid or collected previous bets placed through Mitchell's number. In the search of Mitchell's apartment, records were seized which recorded bets on races before and after the race on which the informer said that he had placed his bet, but no record of that bet was found.

The defendant Wyatt was indicted on two separate counts which arose out of the seizure of evidence on two occasions. One search occurred at 6752 East End Avenue on September 26, 1966, and the other at 740 West 58th Street on September 8, 1966. Wyatt testified that on neither date had he received the bet described in the affidavits. The officer upon whose affidavit the warrant for the search of the East End Avenue apartment was issued testified that the informer did not disclose the name of the person who received the bet. He testified that the informer said that he paid and collected his bets at a tavern, but the officer had not made a record of the location of the tavern and could not remember it. The gambling records seized at the East End Avenue address did not include the bet alleged to have been placed by the informer.

The officer who prepared the affidavit on which the warrant for the search of the West 58th Street apartment was issued testified that the same informer was used and that he (the informer) was not able to identify the person with whom he spoke when he placed thet bets described in the affidavit. In this case, as in the others, there was no record of such a bet among the records seized, nor did the

informer identify the place at which he paid his bets and collected his winnings.

Attached to the motions to suppress in these cases were approximately 30 affidavits which had been used to secure warrants in previous cases. All were similar in form to those here involved. The three officers upon whose affidavits the warrants involved here were issued testified that they had prepared approximately 100 affidavits which contained statements similar to those used here. In none of them was the recipient of the telephoned bet identified. The officers testified that identical procedures were used in all cases in telephoning the bet to the suspected number; the officer dialed the number and handed the phone to the informer.

Defendants contend that they have the right to controvert the matters declared under oath which occasioned the finding of probable cause and the issuance of a search warrant by a judicial officer in each of their respective cases. We have today in *People* v. *Bak, ante* at p. 140, held that no such right obtains, either under the fourth amendment to the United States constitution, section 6 of article II of the Illinois constitution, or under our Code of Criminal Procedure, (see Ill. Rev. Stat. 1967, ch. 38, par. 114—12), and we here expressly adopt the reasoning of that opinion in disposing of this issue.

Defendants next contend that the affidavits used to obtain the search warrants in each case failed to show probable cause and, therefore, the search warrants should have been quashed. The affidavits upon which the warrants in these cases were issued are based almost entirely on hearsay; in each case the affiant's participation is limited to dialing the suspected number and listening to the informer's portion of an alleged conversation. Following the decision of the Supreme Court of the United States in *Jones* v. *United States* (1960), 362 U.S. 257, at 272, 4 L. Ed. 2d 697, 708, 80 S. Ct. 725, we stated in *People* v. *Jackson, 22* Ill.2d 382,

387, that "hearsay may be used to establish probable cause for a warrant, so long as there is a substantial basis for crediting the hearsay." We have adhered to that statement in subsequent cases. *People* v. *York*, 29 Ill.2d 68, 70; *People* v. *Williams*, 27 Ill.2d 542; see also *United States* v. *Ventresca*, 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741.

In *Aguilar* v. *Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, the Supreme Court enunciated the criteria upon which search warrants issued on the basis of information supplied by undisclosed informants are to be judged. The court there held that "the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed [citation] was 'credible' or his information 'reliable'." (378 U.S. at 114.) Recently, in *Spinelli* v. *United States*, 1969, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, the court reaffirmed this position stating: "The informer's report must first be measured against *Aguilar's* standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar*, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision." 393 U.S. at 415.

In applying these standards to the warrants before us, we are mindful of the "established propositions" adhered to in *Spinelli*, that "probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause, [citation]; that affidavits of probable cause are tested by much less vigorous standards than those governing the admissibility of evidence at trial, [citation]; that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of

their common sense, [citation] ; and that their determination of probable cause should be paid great deference by reviewing courts, [citation]." (393 U.S. at 419.) Accordingly, after thorough review of the warrants in question, we find that they were properly issued on probable cause and subscribe to the standards enumerated in *Aguilar*. Here, the affiants specifically averred that they had received information from a "reliable informant" who had in the past supplied them with information which had proved true, exact and accurate and which resulted in enumerated arrests and convictions. Further, the affiants specifically related the "underlying circumstances" from which the informant concluded that illegal gambling operations were being conducted, *i.e.*, when the informer desired to make a wager on a horse race, he would call a specific telephone number. Too, to the extent that affiants overheard the conversation, albeit one-sided, what they heard (the informer placing the bet and "I may call you later" or "That's all for now") corroborated, to a limited extent, the informer's "tip". Accordingly, after giving due deference to the warrants in question (*United States* v. *Ventresca*, 380 U.S. 102, 109, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741) and after thorough analysis of the "underlying circumstances" (*Aguilar* v. *Texas*, 378 U.S. 108, 114; *Spinelli* v. *United States*, 393 U.S. 410) we conclude that the warrants here issued were based on probable cause.

Finally, defendant Mitchell argues that the State failed in its burden of proving her guilty beyond a reasonable doubt. "It is well established that we will not disturb the findings of the trier of fact and substitute our own conclusions unless the proof is so unsatisfactory as to justify a reasonable doubt as to defendant's guilt." (*People* v. *Williams*, 36 Ill.2d 505, 510.) We are unable to find any such deficiency in the record before us.

The judgments of the circuit court of Cook County are therefore affirmed.

*Judgments affirmed.*

Mr. Justice Ward took no part in the consideration or decision of this case.

Mr. Justice Schaefer, dissenting:

The fourth amendment to the constitution of the United States provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." Section 6 of article II of the constitution of Illinois contains a similar prohibition. The basic question in these cases is whether those constitutional provisions can be interpreted to mean that the existence of the facts relied upon to establish probable cause cannot be controverted once the warrant has issued. If there can be no subsequent inquiry into the truth of those facts, the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," is protected only by an unreviewable *ex parte* determination of the lowest officer in the judicial hierarchy. And that determination may be based upon a hearsay report of the statements of an anonymous informer, which would be inadmissible in any judicial proceeding. I cannot bring myself to believe that this is the "probable cause, supported by Oath" required by the fourth amendment.

One of the difficulties in dealing with this area of the law is that most of the cases with which the courts are concerned involve illegal possession of gambling equipment or narcotics, and the result of the search makes guilt unmistakable. The courts have no way of knowing how many unproductive searches are made upon the basis of false affidavits because those cases do not come before the courts. The constitutional requirement of an oath would seem to imply a remedy, either by civil action or by perjury prosecution, for the victim of a search based upon a false affidavit, but the conclusion of the majority in *McCray* v. *Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056, seems to have eliminated any remedy.

In an atmosphere in which there is widespread concern about narcotics problems it is difficult for a court to enforce constitutional guarantees at the instance of one who is unquestionably guilty. But the constitutional provisions are directed at potential abuses by a tyrannical government and those provisions should not, in my opinion, be so diluted in order to secure convictions in narcotics and gambling cases that they can no longer afford protection against the operations of a Hitler type government. It may be that the constitutional protection is phrased in terms that are considered too sweeping to meet the needs of society today. If so, they should be amended. But it is the responsibility of a court to interpret and apply the constitutional provisions as they exist.

The constitutional question involved in these cases was deliberately left open by the Supreme Court of the United States in *Rugendorf* v. *United States* (1964), 376 U.S. 528, 11 L. Ed. 2d 887, 84 S. Ct. 825. The consideration that weighs most heavily in support of the conclusion reached by the majority in these cases is the desire to expedite the disposition of criminal cases. But it is a common characteristic of many constitutional guarantees that they impede the prompt disposition of criminal cases. Indeed, the constitutional privilege against self-incrimination goes further, and interferes with the ascertainment of the truth. The judicial system is resourceful enough to devise procedures which will prevent abuse of the right to challenge the existence of the facts that were relied upon by the issuing officer to establish probable cause. See *People* v. *Alfinito* (1965), 16 N.Y.2d 181, 211 N.E.2d 644; see also A.L.I. Model Code of Pre-Arraignment Procedure, Tent. Draft No. 3, sec. SS 802, and Reporters'. Note.

Apart from constitutional considerations, it seems to me that section 114—12 of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 114—12) clearly provides

for a hearing at which the existence of the facts that were relied upon by the issuing officer to establish probable cause may be challenged. The statute states:

"(a) A defendant aggrieved by an unlawful search and seizure may move the court for the return of property and to suppress as evidence anything so obtained on the ground that: \* \* \* (2) The search and seizure with a warrant was illegal because the warrant is insufficient on its face; the evidence seized is not that described in the warrant; *there was not probable cause for the issuance of the warrant;* or, the warrant was illegally executed.

(b) The motion shall be in writing and state facts showing wherein the search and seizure was unlawful. *The judge shall receive evidence on any issue of fact necessary to determine the motion* and the burden of proving that the search and seizure were unlawful shall be on the defendant." (Emphasis supplied.)

This statute plainly says that evidence is to be received on the question whether there was probable cause for the issuance of the warrant. Since probable cause initially depended on the facts stated in the affidavit upon which the warrant was issued, the statute must mean that upon a motion to suppress, evidence disputing those facts is to be received.

But even if the statute can somehow be construed to mean that evidence may not be received to show the absence of probable cause, I am of the opinion that the guilt of the defendant, Barbara Mitchell, was not established beyond a reasonable doubt. This case was tried upon a stipulation that guilt or innocence should be determined upon the evidence submitted on the motion to suppress. In my opinion that evidence bars a finding of guilty.

Thirty affidavits that had been used to procure warrants in previous cases were presented to the court. These affidavits were all similar to those used in this case. The

officers upon whose affidavits the warrants in the present cases were issued testified that they had prepared a hundred similar affidavits, but that in none of those cases did the informant identify the recipient of the bet. The officers who made the affidavits testified that they did not in any of these cases inquire of the informer where he paid his losses or collected his winnings. This testimony shows a massive in-difference on the part of the officers to their duty to suppress gambling; it seems to suggest a conscious effort to avoid implicating any higher-ups in organized gambling. It is not necessary that we attempt to arrive at a precise rationaliza-tion of these inherently incredible circumstances; their existence, in connection with the wholesale use of "boiler-plate" affidavits is enough, in my opinion, to show an ab-sence of probable cause. The doubts generated by the extra-ordinary testimony of the officers are reinforced by the fact that while records of other bets were found when the war-rant was executed, there was no record of the bet supposed to have been made by the informer. The defendant, Barbara Mitchell, testified that she had never accepted a bet on a horse race. In my opinion her guilt was not proved beyond a reasonable doubt.