**People of the State of Illinois, Appellant, v. Erma Rivera, Appellee.**

**Gen. No. 54,626.**

First District, First Division.

October 13, 1970.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellant.

Warren D. Wolfson, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an appeal by the People of the State of Illinois from an order which quashed a search warrant and suppressed evidence. The appeal was filed pursuant to Supreme Court Rule 604. On appeal the State contends: (A) The trial court erred in finding the informant signed a fictitious name to the complaint for search warrant and in quashing the search warrant; and (B) Aside from the search warrant, probable cause was present to arrest the defendant and seize marijuana in open view.

On July 5, 1967, an informer, Walter Hampton, appeared before a magistrate of the court with Officer Augustus Standfield and presented a "Complaint for Search Warrant." The complaint stated the name of the affiant to be Peter Potts, and it was signed "Peter Potts" and sworn to by Hampton. The complaint requested the issuance of a search warrant to search the "person of Scott (Doe) and 6236 S. Harper Avenue, apartment #201, Chicago, Illinois, and seize . . . a quantity of Heroin, a narcotic drug, which have been used in the commission of, or which constitute evidence of the offense of Unlawful Possession of Heroin, an narcotic drug."

The complaint further stated that ". . . I, Peter Potts, had an occasion to be in the premises located at 6236 S. Harper Avenue, apartment #201, on the 5th day of July 1967, and while in said apartment saw in the immediate possession and under the direct control of one female negro known to me as Scott (Doe) a quantity of narcotics known as heroin. From this quantity of heroin this female negro known to me as Scott (Doe) sold and delivered to me one tinfoil package of heroin for the sum of $25.00 United States Currency. When I left the apartment, the remaining portion of heroin was in the immediate possession and under the direct control of the female negro known to me as Scott (Doe), at 6236 S. Harper Avenue, apartment 201, Chicago, Illinois."

After finding the complaint stated probable cause, the court issued the requested search warrant for the premises on July 5, 1967. On that same day, Officer Standfield and his partner, Officer Gary, proceeded to the

premises set forth in the warrant. Officer Standfield testified that he knocked on the door and when defendant opened the door he said, "Police officer and I showed my badge and she attempted to close the door and the chain was on it. My partner and I pushed the chain off and entered." They found marijuana and heroin in the apartment and placed defendant under arrest. Thereafter, defendant was indicted for "unlawful possession of narcotic drug."

Defendant's "Motion to Quash Warrant and Suppress Evidence" alleged the search warrant was defective in that "[4.a.] The affidavit for the search warrant does not state probable cause for its issuance. Further, the name 'Peter Potts' is false and fictitious."

At the hearing of the motion on May 27, 1969, the defendant testified she did not know Peter Potts or Walter Hampton, and she did not sell heroin to him or anyone else on July 5, 1967.

Officer Standfield and Peter Potts were called as witnesses by defendant. Standfield testified that upon entering the apartment he found a substance subsequently identified as marijuana strewn on the floor from the front door to the bathroom door in large quantities. He also testified at that time that the heroin found was located in a table drawer in the living room. Hampton testified that when he purchased the heroin on July 5, 1967, from the female he knew as Scott, he did not enter the apartment but made the transaction through an open doorway.

Hampton also testified that Walter Hampton was his true name, and he was known in the streets as "Peter Potts." He stated he had lived under the Peter Potts name on various occasions in 1964, 1965 and 1966; that the name Peter Potts has been on his doorbell in a Chicago apartment. In July of 1967, when the affidavit was signed, he was living under his true name, "Walter Hampton." Hampton began using the name Peter Potts in 1964 when he was working with the Narcotics Bureau, and he used "Peter Potts" when signing search warrants for the police.

After an extended hearing and argument of counsel on the motion to quash, the trial judge on June 13, 1969, stated: "Now, the Court holds, that under the Pugh case [United States ex rel. Pugh v. Pate, 401 F2d 6 (7th Cir 1968)] . . . that this affidavit is defective. That it is signed by a fictitious person. That the person who signed his name is a fictitious person, did not inform the issuing magistrate of this fact. And I hold that the warrant should be quashed and the evidence should be suppressed. That is the order."

Initially, the State contends that the defendant failed to sustain its burden in proving that the name appearing on the complaint was fictitious within the meaning of United States ex rel. Pugh v. Pate, and therefore, that case is inapplicable to the facts in the instant case and the instant search warrant was not tainted. There the court said (p 8):

> "While the state prosecution now before us is not subject to the federal rules of procedure, we think the fourth amendment itself, in requiring an oath or affirmation, precludes hiding the identity of an affiant or affirmant by use of a false name."

The State argues that in Pugh it was not disputed that the affiant signed a fictitious name. The affiant was not produced at the hearing of the motion to quash the search warrant. No one was present to take responsibility for the facts alleged under oath to the magistrate who issued the search warrant, whereas in the instant case the informant, Peter Potts, alias Walter Hampton, appeared on the motion to suppress, testified and accepted full responsibility for the facts previously alleged in the complaint for a search warrant.

. The State further notes that Officer Standfield testified that he had known the informant for at least four years, and that he was known by both names, Peter Potts and Walter Hampton. The State further argues that although substantial evidence was produced to show that the informant had two names, the defense presented nothing to the contrary except a statement in another

proceeding by an Officer Gary that Peter Potts was a fictitious name.

As to the use or adoption of an assumed name, whether it is called fake or fictitious or an alias, it is said in 27 ILP, Names:

"A man's name is the designation by which he is distinctively known in the community. . . ." [§ 1, p 628.]

"A person may be designated in legal proceedings by the name by which he is commonly known, although it is not his true name." [§ 1, p 629.]

"At common law, and in the absence of statutory restrictions, an individual may lawfully change his name without resort to any legal proceedings, and for all purposes the name thus assumed will constitute his legal name just as much as though he had borne it from birth." [§ 5, p 635.]

And in 65 CJS, Names:

"It is sufficient, in legal proceedings and elsewhere, that a person is designated by a name by which he is commonly known and called even though it is not his true name. It is not necessary that he shall be known as well by the one name as by the other; it is enough if he is commonly so known." [§ 10, p 24.]

"In the absence of statutory restriction, one may lawfully change his name without resort to any legal proceedings as long as it does not interfere with the rights of others and where it is not done for a fraudulent purpose. The name thus assumed will constitute his legal name for all purposes just as much as though he had borne it from birth or as though it had been provided for by a court order, even though the name taken is the name of another living person." [§ 11, p 25.]

After examining the various authorities on the question of the use of fake or fictitious names and signatures on affidavits to secure the issuance of search warrants,

we note that there is an extended use of fictitious names in a number of criminal areas, such as the fields of narcotics and gambling.

On this question our Supreme Court in People v. Mack, 12 Ill2d 151, 145 NE2d 609 (1957), said (p 163):

> "Next to be considered are the issues created by the refusal of officer Sims to disclose the identity of the informer who signed the complaint for the search warrant that provided the authority for the seizure of vital evidence against defendant. The latter does not here contend that the fictitious signature rendered the warrant void, (see: United States v. McKay, 2 F2d 257, holding that a fictitious name signed to the affidavit is no ground for quashing the search warrant), nor does he deny that the allegations of the informer's complaint and affidavit afforded probable cause for the issuance of the warrant. . . ."

And at page 164:

> "In meeting this issue we are benefited by the recent case of Roviaro v. United States, 353 US 53, 1 L Ed 2d 639, wherein the court, after reappraising former decisions, reiterated its recognition of the government's privilege, commonly called the 'informer's privilege,' to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with the enforcement of that law. The court said: 'The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.' "

And at page 165:

> "The Roviaro case also pointed out that the privilege is not absolute and added to the already established exceptions those cases where disclosure is required

by fundamental fairness, e. g., where the disclosure of the identity is relevant and helpful to the defense of the accused, or is essential to a fair determination of the cause."

In a dissent filed in the Pugh case, Circuit Judge Roger J. Kiley said (p 8):

"I dissent. Pugh contends that the use of the fictitious name on the affidavit for the warrant per se voids the warrant under the Fourth Amendment. I cannot agree with this contention because I find nothing in the Constitution which requires such a result *absent a showing of some prejudice to petitioner*. Here petitioner does not claim that the issuing magistrate was not aware that the affiant was using a false name or that the affiant's true identity was unknown to the magistrate. Petitioner does not claim that he sought the identity of the affiant from police and was unable to get it or even that he did not know the real identity of the affiant. I agree that the affiant must be named where the defendant wishes to question the existence of probable cause by a motion to suppress, but petitioner here has not, so far as the record before us shows, ever questioned the existence of probable cause. [Emphasis supplied.]

"The Fourth Amendment requires a warrant to be supported by oath or affirmation but does not expressly require the person giving that oath to sign his correct name. No Supreme Court case is cited which supports Pugh's contention. The case of King v. United States, 282 F2d 398, involved a federal search warrant to seize liquor, and the facts in that case do not warrant its use in supporting Pugh's contention. There a hearing on a motion to suppress disclosed that the affiant used a quality fictitious name to add reliability to the application, and that the issuing magistrate was deceived. Moreover, the actual affiant could not be located to testify at a hearing on the motion to suppress. But here the motion to sup-

press was on the ground that the fictitious name itself voided the warrant.

"The Illinois Appellate Court rejected Pugh's per se contention in People v. Pugh, 69 Ill App2d 312, 217 NE2d 557; and in People v. Mack, 12 Ill2d 151, 145 NE2d 609, at page 615 the Illinois Supreme Court stated that a fictitious name in the affidavit for a warrant is not ground for quashing a warrant. In my view the Illinois Appellate and Supreme Court decisions construing Illinois law with respect to the issuance of search warrants should not be circumvented by a decision of a federal court construing Rule 41 (c) Fed R Cr P, where the Illinois court decisions do not offend the requirements of the Fourth Amendment as included in the Fourteenth Amendment."

■ Although we do not approve of the use of fictitious names on affidavits for a search warrant, we are not persuaded that the use of a fictitious name in the instant case, absent a showing of prejudice to the defendant or fundamental unfairness, was ground for the quashing of the instant search warrant. Therefore, we find it was error to quash the instant search warrant and suppress the evidence.

■ Next considered is the question of whether the complaint stated probable cause. Although the determinative issue here was the use of a fictitious name by the complainant, we have examined the complaint to see if probable cause was sufficiently set forth. The complaint states that the affiant personally purchased narcotics at the place identified therein from a woman known to him as Scott, and when he left the apartment heroin was in the immediate possession and direct control of the woman from whom he made the purchase of narcotics. We find the warrant was issued on probable cause within the standards enumerated in People v. Bak, 45 Ill2d 140, 258 NE2d 341 (1970) ; People v. Mitchell, 45 Ill2d 148, 258 NE2d 345 (1970) ; and People v. Williams, 45 Ill2d 319, 260 NE2d 1 (1970). Therefore, there is no reason for this court to consider the conflicts

in the testimony of Standfield and Potts at a preliminary hearing and at the hearing on the motion to quash, because on the hearing on the motion to quash the question of probable cause should have been limited to the four corners of the complaint.

For the reasons given, the order appealed from is reversed.

Reversed.

BURMAN, P. J. and ADESKO, J., concur.