**UNITED STATES of America ex rel. Clarence MAYFIELD, Petitioner-Appellant,**

v.

**Frank J. PATE, Respondent-Appellee.**

**No. 18381.**

United States Court of Appeals, Seventh Circuit.

Oct. 13, 1971.

Clarence Mayfield, pro se; David C. Thomas, Legal Aid Bureau, Chicago, Ill., for petitioner-appellant.

Robert E. Davison, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before DUFFY, Senior Circuit Judge, and STEVENS and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

In this appeal from the denial of a habeas corpus petition,[1] the issue is whether to apply the rule of United States ex rel. Pugh v. Pate, 401 F.2d 6 (7th Cir. 1968), cert. denied, 394 U.S. 999, 89 S. Ct. 1590, 22 L.Ed.2d 777 (1969). This court held in *Pugh* that the use of a fictitious name on an affidavit for a search warrant invalidates the warrant.

Petitioner was convicted by an Illinois court in 1964 of possession of heroin and marijuana. Most of the evidence against him was seized during the search of two apartments on September 24, 1963. The warrants for the searches were obtained on the basis of two affidavits signed by "Albert Jones," which turned out to be the pseudonym of a paid informer. The affidavits were identical except for the addresses; the informer recited that he had purchased heroin from petitioner on the previous day, and that petitioner occupied the apartment at each address.

Since the search preceded the *Pugh* case by five years, our task is to decide whether *Pugh* was the unexpressed rule in this circuit in 1963; and, if it was not, whether we should apply *Pugh* retroactively.

Petitioner contends that *Pugh* did not announce a new rule for this circuit, that it merely applied federal principles which had been established before 1963. The only pre-1963 Supreme Court case petitioner cites deals with the require-

ment that an affidavit must set forth sufficient facts for the magistrate to be able to make an independent judgment whether probable cause exists for issuance of a warrant. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). *Giordenello*, like United States v. Pearce, 275 F.2d 318 (7th Cir. 1960), was concerned with the personal knowledge of the affiant, not with his identity.

Petitioner says King v. United States, 282 F.2d 398 (4th Cir. 1960), the case relied on by the *Pugh* court, foreshadowed *Pugh* and established the standard for Illinois courts. Aside from the obvious obstacle that *King* was a Fourth Circuit case, it was not clear before *Pugh* that *King* would apply to state cases. *King* was an appeal from a federal conviction. The Fourth Circuit noted (at 400 n. 4) that "perhaps" the majority of states do not allow a challenge to the truthfulness of facts alleged by the affiant.[2] And the decision rested on Rule 41(c), Fed.R.Crim.P., as well as on the Fourth Amendment.

We conclude that *Pugh* established a new standard for this circuit, and that we must decide whether it applies retroactively to the 1963 search.

■ Because the *Pugh* rule was announced in a state habeas corpus case, petitioner theorizes that the rule is automatically retroactive. The court did apply the rule retroactively by vacating Pugh's conviction in his collateral attack. Presumably the proposed theory relies on the notion that equal protection for all state habeas corpus petitioners requires full retroactivity of the case.

We reject this argument because of our agreement with the Ninth Circuit in

---

1. The district judge's opinion appears at 305 F.Supp. 41 (N.D.Ill.1969).

2. A majority of the Illinois Supreme Court refused to permit attacks on the accuracy of affidavits for warrants in People v. Bak, 45 Ill.2d 140, 258 N.E.2d 341, and People v. Mitchell, 45 Ill.2d 148, 258

N.E.2d 345, cert. denied, 400 U.S. 882, 91 S.Ct. 117, 27 L.Ed.2d 120 (1970). In fact, the Illinois courts both before and after *Pugh* have declined to invalidate warrants obtained with affidavits signed with fictitious names. People v. Stansberry, 47 Ill.2d 541, 268 N.E.2d 431 (1971).

Castro v. United States, 396 F.2d 345, 349 (1968):

> If the appellate court concludes in a collateral proceeding that there was a substantial impropriety in the * * * procedure, it is appropriate to give the applicant the benefit of the ruling. This is dictated not only by the requirement of Article III of the Constitution that we resolve issues solely in concrete cases or controversies, but also by the fact that, otherwise, counsel would have less incentive to advance contentions requiring a change in the law. * * *

But the fact that, for these reasons, the applicant who first raises the point receives the benefit of the new ruling, does not preclude the court from giving the ruling only prospective application as to others. The seeming inequity in fixing such a cut-off date is outbalanced by the factors of reliance and burden on the administration of justice which argue for prospective application only in other cases.

And see Schmear v. Gagnon, 396 F.2d 786 (7th Cir. 1968), cert. denied, 395 U.S. 978, 89 S.Ct. 2125, 23 L.Ed.2d 767 (1969).

■ The fact that many new Supreme Court rulings in habeas corpus cases have been held retroactive is, in our opinion, more a coincidence than a command.[3]

Rather than deciding retroactivity by the direct or collateral nature of the case, we prefer to use the standards enunciated by the Supreme Court and the courts of appeals.[4]

■ The most recent Supreme Court discussion of retroactivity in cases involving the exclusionary rule is found in Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). The Court notes that new standards under the Fourth Amendment[5] have been promulgated to deter police invasions of individual privacy, not to improve the accuracy of fact-finding at a criminal trial. Because the new standards did not affect the reliability and probity of the evidence illegally seized, the Court applied the new cases prospectively

3. *E. g.,* Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), applied retroactively in Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963); Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), applied retroactively in McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968); Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), applied retroactively in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

4. At oral argument the question was asked and unanswered whether federal courts of appeals had considered the retroactivity of their own cases. We have discovered the following instances: United States v. Washington, 134 U.S.App.D.C. 135, 413 F.2d 409, 410 (1969); United States v. Tarrago, 398 F.2d 621, 625 (2d Cir. 1968); United States v. Coke, 404 F.2d 836, 848 (2d Cir. 1968); Brown v. United States, 368 F.2d 841 (5th Cir. 1966); Juelich v. United States, 403 F.2d 523, 525 (5th Cir. 1968), cert. denied, 394 U.S. 1002, 89 S.Ct. 1598, 22 L.Ed.2d 779

(1969); Blake v. United States, 407 F.2d 908, 916 (5th Cir. 1969); United States v. Smith, 404 F.2d 720, 728 (6th Cir. 1968); United States v. Shapiro, 383 F.2d 680, 687 (7th Cir. 1967); United States v. Amabile, 395 F.2d 47, 53 (7th Cir. 1968), vacated on other grounds, Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); Schmear v. Gagnon, 396 F.2d 786, 788 (7th Cir. 1968), cert. denied, 395 U.S. 978, 89 S.Ct. 2125, 23 L.Ed.2d 767 (1969); United States v. Solomon, 422 F.2d 1110, 1117 (7th Cir.), cert. denied, 399 U.S. 911, 90 S.Ct. 2201, 26 L.Ed.2d 565 (1970); Castro v. United States, 396 F.2d 345, 349 (9th Cir. 1968); Fong v. United States, 411 F.2d 1181, 1182 (9th Cir.), cert. denied, 396 U.S. 968, 90 S.Ct. 450, 24 L.Ed.2d 434 (1969); Wade v. United States, 426 F.2d 64, 73–74 (9th Cir. 1970).

5. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

only.[6] The *Pugh* rule, excluding evidence seized under a warrant obtained with a fictitious signature, clearly falls into the same category as other Fourth Amendment cases. It does not apply to searches before July 1, 1968.[7]

■ Petitioner argues that *Pugh* should apply to his case because the use of a fictitious name on the affidavits affected the fact-finding process. This tenuous proposition is built on the dispute at trial between police officers and petitioner as to control of the premises searched. Petitioner says if the jury had known that the officers had perjured themselves about "Albert Jones," they might have resolved the factual dispute against the discredited police. Given the common use of aliases to protect informers, it is highly speculative that such a relatively inconsequential misrepresentation would have affected the jury's decision on credibility.

The police who searched the two apartments were relying on Illinois law that they could withhold the identity of the informer who signed the search warrant affidavit. People v. Mack, 12 Ill.2d 151, 145 N.E.2d 609 (1957). The evidence seized was reliable and sufficient to convict petitioner. We therefore affirm the denial of his petition for a writ of habeas corpus.

The other issues raised in petitioner's brief were not presented in the habeas corpus petition and so are not properly before us.

Affirmed.

STEVENS, Circuit Judge (concurring).

The unarticulated premise for petitioner's argument is that a federal court of appeals should not countenance a collateral attack on a final judgment of a state court unless the claimed error is sufficiently fundamental to warrant evenhanded, retroactive application to other final judgments. I find myself in basic agreement with that premise, but Judge Sprecher has plainly demonstrated that the rule of the *Pugh* case should not be applied retroactively. Thus, the logic of my position forces me to acknowledge that I would have sided with Judge Kiley, if I had been presented with the *Pugh* issue as an original proposition. I do not believe that the difference between the federal government's method of preserving an informer's anonymity, as approved by the Supreme Court in Jones v. United States, 362 U.S. 257, 271–273, 80 S.Ct. 725, 4 L.Ed.2d 697 (see, also dissenting opinion by Mr. Justice Douglas at p. 273, 80 S.Ct. at p. 737), and the method employed by the State of Illinois, is of sufficient importance to justify requiring the states to follow the federal procedure.

---

6. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), denying retroactivity to *Mapp*; Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), denying retroactivity to *Katz*; Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), denying retroactivity to *Chimel*.

7. Both the Illinois Supreme Court and Judge Robson of the Northern District of Illinois have held *Pugh* to be prospective. People v. O'Kiersey, 46 Ill.2d 198, 263 N.E.2d 488 (1970); United States ex rel. Smith v. Pate, 305 F.Supp. 225 (N.D.Ill.1969). The Kentucky Court of Appeals applied *King* in Hay v. Kentucky, 432 S.W.2d 641 (1968), but the opinion does not give the date of the search. Since the case was a direct appeal from a state conviction, it is unlikely that the search occurred before the 1960 *King* opinion.