The People of the State of Illinois, Plaintiff-Appellant, *v.* Jose Garcia, Defendant-Appellee.

(Nos. 60063-60069 cons.;

First District (2nd Division)—March 31, 1975.

LEIGHTON, J., dissenting.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Jerome Charles Randolph, Assistant State's Attorneys, of counsel), for the People.

Richard H. Devine, of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, Jose Garcia, was charged with one count of unlawful possession of marijuana (Ill. Rev. Stat. 1973, ch. 56½, par. 704), one count of unlawful possession of cocaine (Ill. Rev. Stat. 1973, ch. 56½, par. 1402), and four counts of failure to register a firearm (Chicago, Ill., Code 1973, ch. 11.1, par. 11.1—7). Defendant's arrest and the seizure of the contraband stemmed from a search warrant issued November 13, 1972, to search defendant and the second-floor apartment at 918 N. Pulaski Rd., Chicago, and seize a controlled substance (cocaine). Defendant's motion to quash the search warrant was granted by the circuit court of Cook County. The State now, pursuant to Supreme Court Rule 604(a)(1), appeals that order. Ill. Rev. Stat. 1973, ch. 110A, par. 604(a)(1).

The search warrant in question was issued on November 13, 1972, on a complaint filed that same day by Officer Bernard Brown of the Chicago Police Department. In his complaint for a search warrant Officer Brown filed the following affidavit:

"I, Bernard Brown, a police officer for the City of Chicago had a conversation on the 12 November 1972 with a reliable police informer relative to narcotic violations. I have known this police informer for the past three years as a user of drugs. During the past three years I have had five conversations with the reliable police informer relative to narcotic violations and on each of these five occasions narcotic contraband was recovered. Of the five cases made by the reliable information of the reliable police informer three cases ended in convictions in the criminal court and 2 cases were B.F.W.[1] During my conversation with the reliable police informer on the 12 November 1972 he stated to me that on the 12 November 1972 reliable police informer was in the 2nd floor apt. located at 918 N. Pulaski Road and while there purchased a tin foil packet of cocaine from male Mexican known as Joe Garcia as above described for the sum of $50.00 USC. Reliable police in-

---

[1] When defendant fails to appear at a scheduled court appearance, his posted bond is forfeited and an arrest warrant for defendant is issued. Hence, B.F.W.

former has been a user of cocaine drugs for the past eight years and should be considered an expert as to what cocaine is the feeling received from taking the cocaine. Reliable police informer further stated to me when leaving said premises located at 918 .N. Pulaski Road 2nd floor front apt. said M/Mex known as Joe Garcia still had a larger quantity of cocaine in his immediate possession and under his direct control. This building was kept under surveillance on the 12 November 1972 by Inv. R. McKelvey who observed many males and females of Spanish descent entering and emerging from said apt. and many of them were known as users of drugs to said investigator."

At the hearing on the motion to quash, defendant did not challenge the first requirement, namely, that the affidavit sufficiently establish that the informant was reliable. The absence of such an attack is not surprising, since the affidavit clearly established the informant's reliability—previous information resulting in three convictions and two B.F.W.'s. *People v. Portis*, 4 Ill.App.3d 333, 280 N.E.2d 712; *People v. Cook*, 133 Ill.App.2d 335, 273 N.E.2d 261.

However, defendant did vigorously challenge the second requirement, namely, that the affidavit establish sufficient facts from which the informant concluded that narcotics were where he claimed they were. Specifically, defendant argues that the affidavit failed to allege exactly how the informant knew that what he purchased was cocaine. Defendant argues that as to both requirements, the affidavit states bald conclusions and not underlying facts.

Defendant argues that the affidavit does not state that the informant actually used the substance he bought from defendant to determine that it was, in fact, cocaine. Rather, the affidavit merely states:

"[Informant] while there purchased a tin foil packet of cocaine from male Mexican known as Joe Garcia as above described for the sum of $50.00 USC."

The State argues that the next sentence of the affidavit—

"Reliable police informer has been a user of cocaine drugs for the past eight years and should be considered an expert as to what cocaine is the feeling received from taking the cocaine."

—clearly indicates that since the informant was an "expert drug user," his mere statement that he purchased cocaine should be sufficient.

While it can hardly be denied that the affidavit could be written with greater clarity, the personal purchase by the informant, an "expert drug user," is sufficient. In *People v. Ranson*, 4 Ill.App.3d 953, 955, 282 N.E.2d 462, the officer's affidavit similarly stated:

"'[Informant] while there bought from a male Negro known to

him as "Boot" a packet of heroin for the sum of $25.00 in United States currency. * * *' "

The court in *Ranson* found the affidavit sufficient stating:

"The affidavit of officer Nance set forth underlying circumstances which would justify the conclusion that Ida Ranson was in the possession of heroin. The informant was recently in the apartment identified in the complaint; he purchased a packet of heroin and Ranson possessed some heroin after the transaction. Although these allegations were uncorroborated, they were sufficiently detailed to enable the magistrate to ascertain how the informant acquired his information and to determine the probability that a quantity of narcotics was still in the apartment." (4 Ill.App.3d 953, 955.)

Likewise in *People v. Rivera*, 130 Ill.App.2d 321, 322, 264 N.E.2d 699, the officer's affidavit stated:

" '[Informant-affiant] while in said apartment saw in the immediate possession and under the direct control of one female negro known to me as Scott (Doe) a quantity of narcotics known as heroin. From this quantity of heroin this female negro known to me as Scott (Doe) sold and delivered to me one tinfoil package of heroin for the sum of $25.00 United States Currency."

The court in *Rivera* also found that affidavit sufficient stating:

"The complaint states that the affiant personally purchased narcotics at the place identified therein from a woman known to him as Scott, and when he left the apartment heroin was in the immediate possession and direct control of the woman from whom he made the purchase of narcotics. We find the warrant was issued on probable cause * * *." 130 Ill.App.2d 321, 328.

■■ Thus, the court could rely solely on *Ranson* and *Rivera* and hold that the affidavit was sufficient to inform the issuing magistrate of the facts underlying the informant's conclusions that what he personally purchased was cocaine.

Moreover, there is additional helpful language present in the instant affidavit that was not available to the courts in *Ranson* and *Rivera*. The present affidavit alleges that the informant was a drug user for 8 years and was an expert in what was cocaine. Additionally, there is language in the present affidavit, although admittedly vague, that the instant informant did actually use the cocaine purchased. Note:

"* * * should be considered an expert as to what cocaine is the feeling received from taking *the* cocaine." (Emphasis supplied.)

The definite article "the" seems to refer to the cocaine purchased and not cocaine generally. On the basis of this additional support together

with *Ranson* and *Rivera,* we conclude that the defendant's first argument is unpersuasive.

■■ Defendant next challenges the sufficiency of the affidavit's allegation that cocaine was still present in defendant's premises when the informer left. He notes the following language:

> "[W]hen leaving said premises \* \* \* Jose Garcia still had a larger quantity of cocaine in his immediate possession and under his direct control."

Defendant again contends that this is a mere conclusion. The short answer is that again in both *Ranson* and *Rivera* substantially similar allegations were found sufficient—as indicated by the above cited language. Thus, we conclude that merely on the basis of *Ranson* and *Rivera* the affidavit was sufficient to establish probable cause for issuance of the search warrant.

Moreover, apart from *Ranson* and *Rivera,* there is additional support for finding the affidavit sufficient. For, it should be noted that the instant affidavit contains some corroboration by police officers. While it is admittedly weak, the affidavit does state:

> "This building was kept under surveillance on the 12 November 1972 by Inv. R. McKelvey who observed many males and females of Spanish descent entering and emerging from said apt. and many of them were known as users of drugs to said investigator."

It is clear that an affiant may base his request upon the information received from fellow officers who are engaged in a common investigation. (*United States v. Ventresca,* 380 U.S. 102; *People v. Levin,* 12 Ill.App.3d 879; 299 N.E.2d 336.) In *People v. Neal,* 12 Ill.App.3d 525, 299 N.E.2d 532, the court applied the same rule and pointed to corroboration of the same type, that is, an officer's observation of people going in and out of defendant's premises and found probable cause.

■■ Probable cause is only a reasonable belief that an offense has been committed and that the defendant committed it. The affidavit must only inform the issuing magistrate of the facts relied on by a complaining officer to show probable cause. (*People v. Tate,* 44 Ill.2d 432, 255 N.E.2d 411.) Search warrants must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion lest police officers, who frequently draft them, be discouraged from submitting their evidence to a judicial officer before acting. The order quashing the search warrant is reversed and the cause remanded for further proceedings.

Reversed and remanded.

DOWNING, P. J., concurs.

Mr. JUSTICE LEIGHTON, dissenting:

The search warrant in this case was quashed because the trial court found, as defendant had argued, that the affidavit which supported the application did not state the underlying circumstances which show that the informer knew defendant had cocaine in his home. In the trial court and before us, defendant has argued that the affidavit did not state nor allege any facts from which it could be found that the informer used, tested or by some other way determined that what he had obtained from defendant and what he had seen in his possession was cocaine. The underlying circumstances described in the affidavit were that, according to the informer, he "* * * was in the 2nd floor front apt. located at 918 N. Pulaski Road and while there purchased a tin foil packet of cocaine from male Mexican known as Joe Garcia as above described for the sum of $50.00 USC," and that, according to affiant, "[r]eliable police informer has been a user of cocaine drugs for the past eight years and should be considered an expert as to what cocaine is the feeling received from taking the cocaine [sic]."

My reading of this affidavit leads me to observe a lack of factual allegations which told the issuing magistrate how the informer claimed the ability, from purchase alone, to identify what he had purchased and, without more, to tell it was cocaine. Affiant did not say who told him that the informer was an expert on cocaine. Therefore, I disagree with the opinion of the majority. In my judgment, the construction placed on this affidavit stretches it beyond its allegations. Moreover, in my mind its validity is serious impaired because it concludes with the bald statement that "[t]his building was kept under surveillance on 12 November 1972 by Inv. R. McKelvey who observed many males and females of Spanish descent entering and emerging from said apt. [sic] * * *." Exactly how a person can keep a building under surveillance and still see people of a given nationality enter and leave an apartment on the second floor is left to the imagination. I believe that the affidavit of a police officer who applies for a warrant to search a home in reliance on the hearsay of an undisclosed informer should not contain statements whose factual bases have to be imagined.

An application for a search warrant may be supported by an affidavit based on hearsay information furnished by an informant; but such an affidavit must tell the issuing magistrate the underlying circumstances of the hearsay information. (Aguilar v. Texas (1964), 378 U.S. 108, 114, 12 L.Ed.2d 723, 84 S.Ct. 1509; Spinelli v. United States (1969), 393 U.S. 410, 21 L.Ed.2d 637, 89 S.Ct. 584.) And, as the majority points out, affidavits for search warrants should be interpreted in a realistic manner, not tested by elaborately technical requirements. In fact, I have had oc-

casion to say this for the court. (See *People v. Peavy,* 1 Ill.App.3d 478, 274 N.E.2d 892.) But the requirement that every search warrant affidavit state the underlying circumstances of such hearsay as it may contain is not a technical one; it is constitutionally mandated. See *Nathanson v. United States* (1933), 290 U.S. 41, 78 L.Ed. 159, 54 S.Ct. 11; *Giordenello v. United States* (1958), 357 U.S. 480, 2 L.Ed.2d 1503, 78 S.Ct. 1245.

The majority holds that this constitutional mandate is satisfied because the affidavit in this case described the informer as a cocaine addict and stated he purchased a tin foil of that drug from defendant for $50. As I understand it, my brethren in the majority indulge in the theory that an affidavit which states that the informer is an addict, and that he purchased the drug of his addiction, furnishes an issuing judge with sufficient information on which to find that the addict knew what he purchased was the drug to which he was addicted. *People v. Ranson,* 4 Ill.App.3d 953, 282 N.E.2d 462, and *People v. Rivera,* 130 Ill.App.2d 321, 264 N.E.2d 699, are cited in support of this theory.

These cases do not support the proposition for which they are cited. In fact, the issue raised by defendant in this case; that is, that the affidavit was constitutionally deficient because it did not show the underlying circumstances from which the informer learned the information he later furnished, was not present either in *Ranson* or in *Rivera.* In both cases, the issue was reliability of the informer, not whether the affidavit contained the underlying circumstances of the hearsay information.

In determining the constitutional sufficiency of an affidavit to support issuance of a search warrant, I think it is important to remember that in this State the only remedy available to a citzen whose home is searched by a warrant obtained through a false affidavit is prosecution for perjury. (See *People v. Bak,* 45 Ill.2d 140, 258 N.E.2d 341; *People v. Mitchell,* 45 Ill.2d 148, 258 N.E.2d 345.) However, for an aggrieved citizen to have this remedy, the affidavit in support of a search warrant must be such that, if false, it will support a prosecution for perjury. (*People v. Sovetsky,* 343 Ill. 583, 175 N.E. 844.) It must appear that through the affidavit, affiant willfully, corruptly and falsely testified before the issuing magistrate on a matter material to the issue or point in question. See *People v. Glenn,* 294 Ill. 333, 128 N.E. 532; compare *Loraitis v. Kukulka,* 1 Ill.2d 533, 116 N.E.2d 329.

A prosecution for a perjury, however, cannot be predicated on a belief, even though the belief be unfounded in fact and law. (*People v. Hartfield,* 94 Ill.App.2d 421, 237 N.E.2d 193.) Therefore, in this case, if it were proven that affiant's statements concerning the informer's acquaintance with drugs and his knowledge of cocaine were false, there could

not be a prosecution for perjury. The affidavit did not factually state how affiant learned that the informer had used cocaine for 8 years or who considered him an expert on the drug. As we said in *People v. Young*, 4 Ill.App.3d 602, 279 N.E.2d 392, "[f]or all that appears, affiant was relying, not on what he was told by some reliable person; he was repeating rumor and gossip." (4 Ill.App.3d 602, 605.) Thus, if called upon, affiant could say that the statements made to the issuing magistrate were based on beliefs, ones he acquired from rumor and gossip concerning the informer in question that circulated around his police station. For these reasons, I conclude that the affidavit in this case was constitutionally deficient and that the trial court ruled correctly when it ordered the search warrant quashed. Therefore, I respectfully dissent from the reversal of that order.