THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM R. KRUG, Defendant-Appellant.

Fifth District   No. 75-326

Opinion filed April 26, 1976.

G. MORAN, J., specially concurring.

Ralph Ruebner and Daniel Cummings, both of State Appellate Defender's Office, of Elgin, for appellant.

Loren P. Lewis, State's Attorney, of Benton (Bruce D. Irish and Rolf F. Ehrmann, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendant-appellant, William Krug, was convicted of unlawful possession of more than 500 grams of marijuana and unlawful production of marijuana after a jury trial in Franklin County. He was sentenced to 4 years' probation with the first 6 months to be served in periodic imprisonment.

At the time of the instant offenses, defendant was living in a rented house in Sesser, Illinois. At the northwest corner of the house was a cultivated garden which contained, as its sole vegetation, some 60 cannabis sativa (marijuana) plants. These plants ranged in size from 1 to 4 inches in height and could be seen clearly from the sidewalk and street adjoining the house and lot, 20 feet away. On observing this garden in front of the defendant's residence, William Owens, the chief of police of Sesser, sought and secured a search warrant for the lot and the house to seize cannabis sativa plants and leaves. In his affidavit in support of the warrant application, Owens described the garden and the plants and stated that from his experience in dealing with marijuana he believed these plants to be marijuana plants. Later the same day, Owens, together with Officers James Pritchard, Ralph Olguin, and Clifford Parrish, approached the premises to be searched, observed the marijuana plants outside the house, and identified themselves as police officers to the defendant. The defendant, Darrell Moles and Bob Arnett, who were also in the house, were informed of their rights, searched, and sequestered in the living room of the house while the officers conducted a thorough search. The search disclosed: cannabis sativa L (marijuana) in a dresser drawer, between the dresser and the bed, in a cigar box in a closet, and hanging in a garment bag in a closet in the front bedroom; on a television set, in a plastic envelope and in an ashtray on a stereo speaker in the living room; a 2-foot tall plant growing in a milk carton in the garage; and an undetermined quantity from the garden outside of the house. Michael Podlecki, a criminalist for the Illinois Bureau of Identification, stated that the total weight of the marijuana found within the house was 514.3 grams.

The house was rented to the defendant. Various personal effects, including several pictures, letters addressed to him and a notebook pad bearing his name, were found in the front bedroom. The owner of the house, Lloyd White, stated that the front bedroom was occupied by the defendant. There were no other clothes or personal effects of Moles, Arnett or Jim Beal, individuals whom the defense argued were living in the house at the time of the search, present. White, a friend of defendant,

testified, however, that Beal and Arnett had each once paid one-half of 1 month's rent with the defendant paying the balance. The State attempted to impeach this testimony by producing two prior statements of White that Krug had paid the rent without mention of the payments by Beal and Arnett.

The State has filed a motion to dismiss the cause for want of jurisdiction. Relying upon *People v. Boston*, 27 Ill. App. 3d 246, 327 N.E.2d 40 (5th Dist. 1975), the State argues that because the notice of appeal was filed before the written probation order, and no notice of appeal was filed subsequent to that time, this court does not have jurisdiction. We disagree as we believe that *Boston* is inapplicable here. In *Boston* we held that where the State filed a notice of appeal after the trial court orally indicated its decision but before a written order was filed, the notice of appeal was not timely filed and we lacked jurisdiction.

■■ In the instant case, the judge ruled upon defendant's petition for probation at the sentencing hearing and entered a lengthy recitation in the docket minutes of his ruling that the probation be conditioned upon periodic imprisonment. Subsequently a written probation order was filed containing the terms and conditions of that probation. This subsequent order in no way affected the judgment of guilt or the length of probation or periodic imprisonment. Had defendant sought to challenge the terms of the written probation order on this appeal, we would be faced with a more difficult problem. But here the judgment and sentence were final as to all but the ministerial incidents of probation and that judgment was clearly indicated upon the written record prior to the filing of the notice of appeal. We believe that defendant has appealed from a final appealable order and that we have jurisdiction to consider the merits of this appeal. See *Heritage Shelter Care Home, Inc. v. Miller*, 31 Ill. App. 3d 700, 334 N.E.2d 355 (5th Dist. 1975).

Defendant raises two issues on appeal: whether the trial court erred in denying defendant's motion to quash search warrant and suppress evidence illegally seized inside his house and whether the trial court permitted the prior unsworn statement of Lloyd White to be used as substantive evidence.

■■ We believe probable cause existed to support the issuance of a search warrant. Defendant admits there were sufficient facts alleged to indicate probable cause for a search of the lot, but not the house. To support the issuance of a search warrant, facts must be related which would cause a reasonable man to believe a crime was being committed and the evidence was in the place to be searched. (*People v. George*, 49 Ill. 2d 372, 274 N.E.2d 26 (1971).) In determining the existence of probable cause, the judicial officer issuing the warrant must interpret and test the supporting affidavits in a common sense and realistic fashion

(*People v. McGrain*, 38 Ill. 2d 189, 230 N.E.2d 699 (1967)) and may draw inferences from the facts presented. (*Cf. United States v. Ventresca*, 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965); *People v. Garcia*, 27 Ill. App. 3d 396, 326 N.E.2d 497 (1975).) Reviewing courts should afford the judgment of the judicial officer great weight and should not impose artificial and technical limitations upon his judgment. (*Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *People v. Mitchell*, 45 Ill. 2d 148, 153, 258 N.E.2d 345, 348 (1970); *People v. McGrain*.) The instant affidavit alleged the existence of an number of plants, believed by the affiant to be marijuana, planted next to the house. At the hearing held on the issuance of the search warrant the affiant testified that the marijuana plants were "in a flower garden, so to speak, right in front of the property adjacent to the house." He also stated that he believed that the defendant knew the plants were marijuana plants and that the defendant had been known to use marijuana. The affiant briefly related his experience in dealing with marijuana. These facts clearly established probable cause that marijuana plants were being grown on the lot. The nearness of the plants to the house, and their apparent cultivation indicated that the occupant of the house knew that the plants were cannabis. Common sense would lead a reasonable man to believe that, in view of the foregoing, other marijuana plants or processed parts thereof would be located within the house. This obviously was the believe of the issuing judge. To hold otherwise would be tantamount to requiring in affidavits for a search warrant elaborate specificity which neither is necessary to insure that a search is reasonable nor materially adds to the protection afforded by this requirement.

Defendant also argues that the trial court erred when it admitted into evidence as substantive testimony a prior inconsistent statement of a defense witness. Lloyd White, the owner of the defendant's residence, called by defendant, testified that Jim Beal paid one-half of one month's rent and a Bobby Arnett paid another one-half of one month's rent for the house. The defendant had paid the balance of the rent each month and the entire rent another month. The State introduced two prior statements of White in which White stated that the defendant Krug had paid the rent on the house without mention of Arnett or Beal. Over the objection of defense counsel that the prior statement was not inconsistent, and, therefore, not impeaching, the State's Attorney was permitted to cross-examine White as to these statements. One of the statements was introduced into evidence. The other contained extraneous matters and was identical to the former as to the identify of the persons who paid the rent on the house and was not admitted. The jury was not admonished by the court during the trial that the prior statement of White was not to be considered as substantive evidence to prove that Krug was in actual or

constructive possession of the cannabis seized in the house. IPI 3.11, which instructed the jury that prior inconsistent statements of a witness could be considered by them in weighing the testimony of that witness, was given over objection of defendant.

Defendant does not challenge the inconsistency of the statement or the propriety of the instruction. He argues that error was committed by the trial court when it failed, *sua sponte*, to admonish the jury at the time White testified as to the proper use to be made of his prior statements with the result that the jury was allowed to use the statement, improperly admitted in evidence, as substantive evidence.

■■ Introduction of prior inconsistent statements of a witness as to a material matter is clearly a proper method of impeachment. The dangers that such evidence may be used improperly by a jury has caused courts to impose limitations and restraints upon the use of these statements. In *People v. Paradise*, 30 Ill. 2d 381, 196 N.E.2d 689 (1964), and *People v. Collins*, 49 Ill. 2d 179, 274 N.E.2d 77 (1971), our Supreme Court outlined the dangers inherent in the use of prior inconsistent statements. The court stated that such impeachment must not be repetitious and the just must be "clearly cautioned and instructed to limit its consideration of such evidence for its proper purpose." (*People v. Paradise*, 30 Ill. 2d 381, 385, 196 N.E.2d 689, 691.) The failure to give a limiting instruction or the improper use of a prior inconsistent statement by the prosecution may be sufficient grounds for reversal. (*People v. Paradise*; *People v. Collins*; *People v. Bailey*, 60 Ill. 2d 37, 322 N.E.2d 804 (1975); *People v. Tate*, 30 Ill. 2d 400, 197 N.E.2d 26 (1964).) Yet these restraints in no way mean that prior inconsistent statements of a defense witness are inadmissible for impeachment purposes. *People v. Kelly*, 22 Ill. App. 3d 908, 317 N.E.2d 282 (2d Dist. 1974).

However, the procedure here complained of is not comparable to that condemned in *Paradise, Collins* and *Bailey*. There the prosecution was allowed to impeach its witness under a claim of surprise and to read at length and introduce testimony of damaging prior statements going directly to the guilt of defendants under the guise of impeachment.

Here the testimony of White and his statements were concerned with the payment of rent. In a sense the matter was collateral since payment of rent would not be direct proof of occupancy of the house. White in fact did testify that Krug was his tenant, paid rent and occupied the house. Other witnesses for the State testified that the front bedroom was apparently occupied by the defendant and that it appeared that no one else lived in the house. The defense sought to cast doubt upon this testimony by the testimony of White, a friend of the defendant, that two other persons had paid part of the rent for the house. White admitted, however, that defendant was the only person that he knew who actually

lived in the house. Whether Beal or Arnett paid a portion of the rent was largely immaterial.

It is the opinion of many scholars and courts that prior contradictory statements of witnesses should be admitted as substantive evidence and that the admission of such evidence does not violate the hearsay rule.

> "[T]he theory of the hearsay rule is that an extrajudicial statement is rejected because it was made out of court by an absent person not subject to cross-examination * * *. Here, however, by hypothesis the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the hearsay rule has been already satisfied. Hence there is nothing to prevent the tribunal from giving such testimonial credit to the extrajudicial statement as it may seem to deserve. Psychologically of course, the one statement is as useful to consider as the other; and everyday experience outside of courtrooms is in accord." (3 Wigmore, Evidence §1018 (3d ed. 1940).)

This position was advanced and rejected in *People v. Collins*, 49 Ill. 2d 179, 274 N.E.2d 77 (1971); however, in *Collins* and in *Paradise, Bailey*, and *Tate,* the prior statement went directly to defendants' guilt. Since *Collins*, other jurisdictions have adopted this view. (See 3 Wigmore, Evidence §1018 (3d ed. 1940, 1975 Supp.).) In our view this position has merit in those instances where the statement does not involve direct assertions of a defendant's guilt. Such statements should be admitted as substantive evidence of the matter asserted within the exercise of sound discretion by the trial court.

■■ In the instant case, however, we do not believe that the admission of the statement into evidence requires the conclusion that the jury was allowed to consider the statement as substative evidence. IPI 3.11, although in our opinion not particularly artfully drawn, advised the jury of the purpose for which it was to consider the statement. In our opinion, it would have been better if the court had required the impeaching portions of the statement to be read to the witness in the usual fashion. Allowing a written statement to go to the jury, whether as impeachment or as substantive evidence, unduly emphasizes the written word over the witness' in court testimony. This practice is to be discouraged in any event.

But the admission of the statement would in our opinion not constitute reversible error regardless of the propriety of its admission. Its probative value as impeachment was weak. The statement was at variance with White's in court testimony only in the failure to state that on two occasions Beal and Arnett, who did not testify, had each contributed one-

half of one month's rent. White was allowed to explain fully his omission of these names from his written statements on redirect examination.

The judgment of the Circuit Court of Franklin County is affirmed.

Affirmed.

EBERSPACHER, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, specially concurring:

I concur in the result reached by the majority, but I do not agree that prior inconsistent statements should be admitted as substantive evidence of the matter asserted, as stated by the majority. This comment is unnecessary to the opinion and amounts only to the majority's idea of what the law should be.