**People of the State of Illinois, Appellee, v.
Eugene R. Yocca, Appellant.**

Gen. No. 50,786.

First District, Third Division.

June 22, 1967.

Franklin D. Loomos, of Chicago (George D. Karcazes, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and David B. Selig, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The defendant, Eugene Yocca, appeals from a judgment finding him guilty of burglary and sentencing him to the penitentiary for a term of from ten to twenty years. Yocca was indicted with four other defendants for the crime. Two of the defendants, Ernest Pucillo and Bruno Dispenza, pleaded guilty. The other two, John Svizzero and John Johnson, pleaded not guilty. They and Yocca were tried by a jury and convicted. This appeal is by Yocca alone.

The facts of this case are detailed in the case of John Svizzero, who prosecuted a separate appeal (People v. Svizzero, 84 Ill App2d 251, 228 NE2d 604 (1967).

The conviction of Svizzero was reversed because of prejudicial error arising from the improper impeachment of Ernest Pucillo, who, after pleading guilty, testified as a witness for the defense. The same alleged error is the first and principal ground urged by Yocca for the reversal of his conviction.

The five men were arrested in a building where a burglary was in progress. The circumstances of the arrest left little room for doubt that all the men were guilty. However, three of them asserted their innocence by pleading not guilty. Yocca and Johnson testified that they and Svizzero came to Chicago late at night after completing a house-painting job in Ohio. They were driving an automobile which had been loaned to them by Pucillo. Johnson telephoned his wife on the way to Chicago and she told him that Pucillo wanted his auto that night and where Pucillo said he would be. They drove to the address given by Pucillo and were arrested almost immediately after entering the building. They said that they did not know that a burglary was taking place.

Pucillo testified that Yocca, Svizzero and Johnson had not participated in the crime. He said that they came to the building because he needed his auto, that he was acting as the lookout for his accomplices, Bruno Dis-

penza and two other men, and that he let the three innocent defendants in the door.

The prosecutor was taken aback by what Pucillo said and he attempted to discredit his testimony. He sought to do this by showing not what Pucillo had said upon a prior occasion but by what he had not said. At the time Pucillo pleaded guilty he answered the questions put to him by the court; but he remained silent when the prosecutor, in response to the judge's request for the facts, stated that Pucillo while in the company of Bruno Dispenza, John Johnson, John Svizzero and Eugene Yocca, entered the premises with intent to commit burglary; that they took certain property and were apprehended on the premises. The prosecutor, over defense objections and motions for a mistrial, was permitted to quote what he himself had said to the court and to show that Pucillo did not dispute the prosecutor's version of the burglary. He was permitted to ask Pucillo whether he told the judge or the prosecutor that the defendants had nothing to do with the burglary, and whether his attorney had not said, "So stipulated" after the prosecutor related the "facts" to the court.

This attempted impeachment was highly improper. While Pucillo was bound by the stipulation of his attorney, Yocca was not. There was no obligation on Pucillo's part, during his own plea of guilty, to disagree with what the prosecutor said about someone else. He admitted his own guilt and this was all that was required for the purpose of his plea. There was nothing that he said that accused Yocca and there was nothing that he did that was inconsistent with his testimony. He neither affirmed nor denied Yocca's guilt and he did not assent to the prosecutor's statement of the "facts." What the jury heard was the prosecutor's own assertion made outside the presence of the defendants on trial that they were guilty of the crime of burglary.

■ An accusatory statement made outside the presence of a defendant cannot be used against him. Even if Pucillo had explicitly agreed with the prosecutor's statement, or if he himself had asserted that Yocca perpetrated the burglary, neither his agreement nor assertion would have been competent evidence against Yocca. Not too many years ago it was the law of Illinois that a statement made outside the presence of a defendant was so prejudicial that it could not be used even for the purpose of impeachment. In People v. Barragan, 337 Ill 531, 169 NE 180 (1929), three men committed an armed robbery and three men were indicted for the crime. One of the defendants, who had pleaded guilty, was returned from the penitentiary and testified that the defendants on trial were not the same men who were with him when the robbery was committed. He was asked if he had not made a contrary statement to the police and excerpts from his previous statement were read to him. The witness denied saying what the statement contained. The trial court overruled defense objections and instructed the jury that the questions put to the witness and the answers made by him were received in evidence only for the purpose of impeachment. The reviewing court in reversing the conviction held that the admission of this statement was highly prejudicial; that although it was offered for the purpose of impeaching the witness, it was hearsay and incompetent and that its sole purpose was to get before the jury evidence of the witness' unsworn statement that the defendants on trial participated in the crime.

People v. Tunstall, 17 Ill2d 160, 161 NE2d 300 (1959), was also an armed robbery case. Two men committed the crime and two men, Tunstall and James Webb, were indicted for it. Tunstall received a separate trial. Webb testified as a witness for Tunstall. He said that he committed the crime but that Tunstall did not. Webb admitted signing a statement on the day of his arrest

which said that Tunstall was with him but said the statement had been coerced. The prosecutor interrogated Webb concerning the questions and answers in the statement and read the full statement to the jury. The reviewing court said that no man can confess to a crime for anyone but himself, and because of this confessions or admissions of a codefendant are not admissible in evidence against an accused unless made in his presence and assented to by him. In answer to the State's argument that the use of Webb's statement was proper to impeach him, the court said that fundamental justice would not countenance accomplishment by indirection of that which it will not permit directly. The court quoted from and approved the decision in People v. Barragan, supra, and stated that Webb's statement could only have resulted in prejudicial influence in the minds of the jurors. Tunstall's conviction was reversed.

■ In People v. Tate, 30 Ill2d 400, 197 NE2d 26 (1964), the defendant relied upon the Tunstall decision. Tate and four other persons were indicted for murder. One of the defendants pleaded guilty and was sentenced to the penitentiary. At Tate's trial he was brought from the penitentiary to testify as a witness for the defense. He testified that he was responsible for the murder and that Tate did not participate in the crime. The prosecutor was permitted to read from a statement made by him after his arrest, not in Tate's presence, in which he said that Tate had stabbed the deceased. The Supreme Court held that this was prejudicial error and reversed Tate's conviction. The court observed, however, that impeachment of a witness by a prior contradictory statement is an accepted practice and stated that it would not adhere to the broad statements in the Tunstall opinion. It pointed out that in Tunstall, as in the Tate case, the jury was not adequately instructed about the limited purpose for which the impeaching evidence could be used. The Tate opinion makes it clear that a prior inconsistent

statement of a codefendant, made outside the presence of the accused, is admissible to impeach his credibility but that the jury must be instructed that the evidence is for this purpose only and must not be taken as proof of the truth of the matters asserted in the statement.

In the case at bar the error in admitting as impeaching, evidence which was not in fact impeaching, was compounded by the failure of the court to either admonish the jurors at the time the evidence was received or to instruct them later that the evidence was for impeachment purposes only and was not to be considered as proof that the "facts" stated by the prosecutor were the facts of the case.

■ In the Svizzero case we held that the attempted impeachment and the failure to instruct the jury about the impeachment were reversible errors. Svizzero's defense and Yocca's were intertwined. Although the evidence of Yocca's participation in the burglary was greater than Svizzero's, and although Yocca's testimony was subject to suspicion because of his criminal record, he and Svizzero were in the same boat. If the improper impeachment of Pucillo harmed Svizzero, it also harmed Yocca. Belief in Pucillo's testimony was pivotal to the defense. If he was believed, Yocca would have been acquitted. His credibility, while suspect as an admitted felon, had some evidentiary support which could have lent credence to the balance of his testimony. $1,300 had been stolen in the burglary. Pucillo testified that he had two accomplices who fled the building and were not arrested. Although a thorough search was made of the building and of the men arrested, the $1,300 could not be found. The jury could have concluded that one of the missing men had fled with the money; that if Pucillo thus told the truth about having other men as accomplices he could have been telling the truth about Yocca, Svizzero and Johnson not being his accomplices.

428

The State's improper attack on his testimony could have destroyed any possibility of its being believed.

Furthermore, the jurors had before them the prosecutor's flat statement that it was a fact that Yocca was one of the burglars. Without appropriate instructions they could have regarded this as substantive evidence of the facts in the case and as proof of his guilt. A defendant, guilty or innocent, is entitled to a fair trial. The errors which we have recounted deprived the defendant of such a trial.

There were other errors, and alleged errors, which are not likely to recur upon retrial.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

SULLIVAN, P. J. and SCHWARTZ, J., concur.