THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES EDWARD KELLY, Defendant-Appellant.

(No. 72-197;

Second District—September 30, 1974.

Ralph Ruebner and Adam Lutynski, both of State Appellate Defender's Office, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz and Edward Morris, both of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant was jointly indicted with one Claude Jackson, a/k/a Mickey Charles Mc Connell, for armed robbery and kidnapping. The defendant was tried separately before a jury, was found guilty of both offenses and was sentenced to 5-15 years for the armed robbery and 3-5 years for the kidnapping.

Two issues are raised by the defendant. The first contention is that reversible error was committed when the prosecutor attempted to, or did, impeach a defense witness. The second contention is that the sentence is excessive.

On the night of April 15, 1971, two Negroes entered the Albert Pick Motel in Rockford, Illinois. They inquired about a room and then at gunpoint they obtained money from two women in the office of the

motel. The women were unable to open the safe, and one woman was then bound and placed on the floor. Then one of the defendants took the other woman upstairs in the motel at gunpoint and forced the hotel proprietor and his wife to come down to the office and open the safe. Finally, the men taped up all four of the people, robbed them, and left.

The two men were in a rented car and apparently drove to the Union Hall Department store parking lot in Rockford, Illinois. Paula Bird was getting into her car when two men came up to it and she locked the doors. One of the men pounded on the window with a gun and she immediately started honking her horn. The men then left her car and accosted one John Hooley who was approaching the rear of the Union Hall. As Mr. Hooley came into the parking lot the men came up to his car, opened the door, and under gun point forced Mr. Hooley to drive them to Madison, Wisconsin. This trip took approximately 2 hours. There, Hooley was put out of his car and the car was subsequently recovered by the Madison police department.

The defendant was arrested in Gary, Indiana, and was brought to Rockford where he was identified "in a police line-up" by all four of the people who had been robbed in the motel. He was also identified by John Hooley.

The defendant presented an alibi defense in which he contended that on the night of the robbery and the kidnaping he had attended a party in Gary, Indiana. Five of his friends, as well as the defendant, testified to this effect. Anthony Reed, called by the defense on direct examination, testified that the defendant was at the party in question on the night of April 15. On cross examination the State attempted to impeach Reed's testimony and queried him as to a purported statement that he had made to the police wherein Reed told the Rockford police that the defendant had "admitted that he robbed the Albert Pick Motel with a guy by the name of Mickey." Reed denied that he had ever related the defendant's conversation to the police. The court, out of the presence of the jury, stated that the evidence adduced in this regard was for the impeachment of Mr. Reed only. The court further stated that the statement was not substantive proof of the offense charged and could only be used for the purpose of "impeaching or the testing of the credibility of the witness Reed."

A police officer was called who testified that he had previously heard defense witness Reed make a statement that the defendant had been "involved in a stick-up here in Rockford" with a man by the name of Mickey. The police officer further testified that Reed gave them a description of the defendant and the area in Gary where the defendant lived.

The court instructed the jury in this regard (People's Instruction #1):
"Any evidence which was received for a limited purpose should not be considered by you for any other purpose."
and (People's Instruction #9):
"Evidence that on some former occasion a witness made a statement inconsistent with his testimony in this case may be considered by you only in deciding the weight to be given to the testimony of that witness."
In closing argument the prosecutor in referring to Reed's testimony stated:
"I don't present this evidence of what the defendant said to Anthony Reed as direct proof of the defendant's guilt here, and I don't want you to consider it that way. I do present it, however, concerning the credibility of Mr. Reed when he says one thing in court and he says another thing when he talked to the police officer, and I think you have a right to consider that."

■■ In the case before us the witness Reed was called as an alibi witness by defense and not by the State. He had made a prior oral statement inconsistent with his testimony and as indicated, an attempt to impeach him was made by the State. In the statement made by Reed to the police officers Reed purportedly stated that defendant told him that he was "involved in a stick-up here in Rockford." We do not believe that, in view of all the testimony in this case, that this statement had any effect on the jury, particularly in view of the above statement of the State's attorney and the court instructions thereto.

The defendant in support of his contention that this cross-examination of Reed constitutes reversible error has cited *People v. Ferguson* (1973), 11 Ill.App.3d 914, 297 N.E.2d 658. This case is readily distinguishable from the factual situation before us. In *Ferguson*, a State's witness had testified in a prior trial. In the subsequent trial he was again called as a State's witness and testified contrary to his prior testimony in the other trial. The State then moved to have the court call the witness as the court's witness and the State's attorney then read to the jury the transcript of the testimony of this witness from the prior trial. The court in *Ferguson* stated that the testimony was not competent as evidence but "ordinarily would have been admissible only for the purposes of impeachment, but in the instant case the material contained in the transcript was so highly prejudicial to the accused it should not have been presented to the jury for any reason." 11 Ill.App.3d at 915, 297 N.E.2d at 660.

The defendant also cited *People v. McKee* (1968), 39 Ill.2d 265, 235 N.E.2d 625. In *McKee* an alleged accomplice was called by the State.

The accomplice on the stand protested his innocence and that of the defendant McKee and stated that any prior statement he had made was a lie. The accomplice was called as the court's witness and on the theory of "impeachment" the State was permitted to confront him on a question and answer basis with every item that he had made in his prior statement to the police. In *McKee* the basic testimony against the defendant was the prior statements of the accomplice, purportedly introduced for impeachment of his credibility.

In *People v. Tate* (1964), 30 Ill. 2d 400, the supreme court stated:

> "* * * we have held that the admission of a confession or statement made outside the presence of a defendant is not competent, even for the purpose of impeachment, where such statement or confession bears directly upon a defendant's guilt or innocence of the crime, and is likely to have a prejudicial influence on the minds of the jury. [Citations.]" (30 Ill.2d at 403.)

In *Tate* a co-defendant had made a prior statement in which he stated that the defendant, Emmett Tate, stabbed the victim. The co-defendant had been convicted upon a plea of guilty. He was brought back from the penitentiary to testify as a witness for the defense and testified that he alone committed the murder and that the two Tates had not participated. The prosecutor then read to the jury a series of questions and answers from a statement in which the co-defendant had stated that both Marshall and Emmett Tate had fought with the victim and that Emmett had stabbed him. This statement was further brought to the jury's attention by a stipulation in which the parties stipulated that the court reporter would testify that he took a statement from the co-defendants in question and answer form. The court went on to say that the "[i]mpeachment of a witness by a prior contradictory statement is of course an accepted technique." (30 Ill.2d at 403.) The court then considered its opinion in *People v. Tunstall* (1959), 17 Ill.2d 160, and pointed out that "[i]nasmuch as the jury was neither informed nor instructed that the statement could be considered only for the limited purpose of determining * * * credibility, * * * its introduction into evidence left the jury free to look upon it as further evidence of the defendant's guilt * * *." (30 Ill.2d at 404.) The court found in *Tate,* as in *Tunstall,* that the jury was not adequately instructed as to the limited purpose for which the impeaching evidence could be used.

In a factually similar case, *People v. Montgomery* (1972), 51 Ill.2d 198, a co-defendant called as a witness by the defendant, testified that he did not know the defendant on the date of the crime but had met him for the first time 2 months later in the Cook County Jail. On cross-examination, ostensibly for the purpose of impeaching his credibility, a

prior inconsistent statement in question and answer form was read to him before the jury in which he had described the crime in detail involving both himself and the defendant. The court recognized the principle that a prior inconsistent statement was admissible to impeach testimony of a witness at trial and that the purpose of so doing is not to prove the facts stated by the witness but to cast doubt on his testimony. However, the court found that "examination of the record persuades us that the trial court permitted the cross-examination to go far beyond the limits of a proper foundation for impeachment and permitted the witness to testify to statements which could only have served to confuse and prejudice the jury."

■■ We do not find the facts in *Tate* and *Montgomery* to be applicable to the situation before us in the instant case. As the appellate court stated in *People v. Yocca* (1967), 84 Ill.App.2d 423, 228 N.E.2d 599, in discussing both *People v. Tunstall* and *People v. Tate*:

> "In People v. Tate, 30 Ill.2d 400, 197 N.E.2d 26 (1964), the defendant relied upon the *Tunstall* decision. * * * The prosecutor was permitted to read from a statement made by him after his arrest, not in Tate's presence, in which he said that Tate had stabbed the deceased. The Supreme Court held that this was prejudicial error and reversed Tate's conviction. The court observed, however, that impeachment of a witness by a prior contradictory statement is an accepted practice and stated that it would not adhere to the broad statements in the *Tunstall* opinion. It pointed out that in *Tunstall*, as in the *Tate* case, the jury was not adequately instructed about the limited purpose for which the impeaching evidence could be used. The *Tate* opinion makes it clear that a prior inconsistent statement of a codefendant, made outside the presence of the accused, is admissible to impeach his credibility but that the jury must be instructed that the evidence is for this purpose only and must not be taken as proof of the truth of the matters asserted in the statement." 84 Ill.App.2d at 427.

The defendant further contends that the decision in *People v. Hannah* (1973), 11 Ill.App.3d 232, 296 N.E.2d 387, is applicable to the instant case. In *Hannah* the trial judge in a bench trial, considered a statement made by defendant's mother which was ostensibly admitted for impeachment. The trial judge stated that the statement was evidence of the guilt of the defendant. The appellate court found that the trial court treated the statement as substantive evidence of the defendant's guilt and reversed and remanded. That is not the situation at all in the case before us.

■■ While the cases concerning the admissability of a prior inconsistent out of court statement of a witness, or co-defendant, for the purpose of impeachment of the witness, when such statement also incriminates the defendant, may appear to be confusing, there appears to be a line of demarcation based upon the facts in each case. In determining the appropriateness of the admission in evidence of such prior inconsistent statements, the courts have uniformly considered several factors: First, whether the prior inconsistent statement is admitted as substantive evidence or solely for the purpose of impeachment, even though the statement may contain an admission of guilt by the defendant. Obviously such statement may not be admitted under the *guise* of impeachment. Second, the cases reveal that the statement should not be read to the jury in detail, such as in question and answer form. Finally, it is essential that the jury should be properly instructed that such statement was not admitted for the purpose of showing the evidence of the guilt of the defendant, or, as substantive evidence, but merely for the purpose of impeaching the credibility of the witness.

In *People v. Collins* (1971), 49 Ill.2d 179, the supreme court considered a portion of this question in detail. In that case the supreme court was asked to reverse the existing rule and find that a prior inconsistent statement of a witness could be considered by the trier of fact as *substantive* evidence. This the supreme court refused to do. But, that opinion in no way held that a prior inconsistent statement could not be used, under proper cautionary instructions, to impeach the credibility of the witness.

As just indicated, factually, *Montgomery*, *McKee* and *Ferguson* are distinguishable from the case before us. In the instant case, the only evidence adduced from the defense witness Reed was that he had previously stated to the police that the defendant had told him that defendant had committed the robbery of the Albert Pick Motel. The testimony elicited on cross-examination of the defense witness and the rebuttal testimony of the police officer, together with the cautionary instructions relative to impeachment and the statement by the State's attorney that the impeachment of the defense witness was not to be considered by the jury as to the guilt of the defendant, is entirely different from that of the cases cited by the defendant. Those cases pertained to prior statements of witnesses, or the defendant, describing in detail the offenses charged against the defendant, admitted for the alleged purpose of impeaching the credibility of the respective witness.

In the case of *People v. Moses* (1957), 11 Ill.2d 84, 87, 142 N.E.2d 1, the supreme court considered almost the identical situation presented to us in the instant case. In *Moses* a witness who had pleaded guilty

and was serving his sentence testified in a co-defendant's trial that Moses did not take part in the crime and had no knowledge of it. On cross-examination the witness was asked whether he had not made a statement to the prosecutors in the presence of the penitentiary guards that Moses had participated in the crime. The supreme court, in holding that such cross-examination was proper, stated:

> "Evidence of prior inconsistent statements by a witness is admissible to impeach his credibility. (*People v. Smith,* 391 Ill. 172, 176.) Such evidence is not admitted as proof of the truth of the facts stated out of court, but to cast doubt on the testimony of the witness by showing his inconsistency, and an instruction to that effect should be given upon request. (McCormick, Evidence, 73; 3 Wigmore on Evidence, sec. 1018.) *It is therefore not hearsay.*" (Reversed on other grounds.) (Emphasis added.)

In the case before us the testimony of the defense witness Reed was not introduced as substantive evidence of the defendant's guilt. The evidence of defendant's guilt was overwhelming. We cannot conceive that the testimony of the defense witness Reed in any way confused the jury. Nor do we find that the conviction was in any way based upon the prior statement of the defense witness Reed to the police implicating the defendant. Five witnesses positively identified the defendant; the first four of which were with the defendant for a considerable time while they were being robbed, and the fifth witness was in the car with the defendant who rode in the front seat for a period of 2 hours while the co-defendant held a gun at the back of the witness' head. There is no question, nor is the contention made, that the identification of the defendant by these five witnesses was an error.

■■ Defendant further contends that the sentence imposed was excessive. As pointed out by the State, the defendant has "impressive criminal credentials." The defendant had been convicted of three offenses and at the time of this trial: an attempted burglary and bond jumping which was pending in Cook County, an attempted grand larceny which was pending in the State of Washington, and a weapon's violation which was pending in the State of Ohio. The sentences imposed for the offenses committed herein are well within the permissible standards in view of the background of the defendant and the severity of the offenses committed.

Judgment affirmed.

T. MORAN, P. J., and SEIDENFELD, J., concur.