STATE OF HAWAII, Plaintiff-Appellee, *v.* DAVID H. BRIGHTER, Defendant-Appellant

NO. 6217

DECEMBER 30, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ.,
AND RETIRED JUSTICE MARUMOTO, ASSIGNED
IN PLACE OF KOBAYASHI, J., ABSENT*

---

* Justice Kidwell, who heard oral argument in this case, retired from the court on February 28, 1979. HRS § 602-10 (Supp. 1979) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

96

*Per Curiam.* Defendant-appellant David H. Brighter was convicted of promoting a detrimental drug in the first degree (possession of 2.2 pounds or more of marijuana) and promoting a harmful drug in the third degree (knowing possession of phencyclidine).[1] He appeals, asserting that the trial court erroneously denied his motion to suppress incriminating evidence obtained pursuant to two search warrants which were preceded by a warrantless entry of the defendant's home and a check of the surrounding area, including an adjacent vacant lot.

Defendant Brighter contends that the evidence obtained from the search warrants is the fruit of an unconstitutional search of his home and therefore should have been suppressed. The State seeks to justify the initial entry of defendant's home as a valid third-party consent search. The Government further contends that the simultaneous grounds check produced evidence constituting independently sufficient probable cause for issuing the first search warrant,

---

[1] The parties agreed to a bench trial by stipulated facts. The stipulations preserved Mr. Brighter's right to appeal from the circuit court's denial of his motion to suppress evidence.

Knowing possession of any amount of phencyclidine was a misdemeanor at the time of defendant's trial. HRS § 329-18(b)(11) (1976) (amended 1977, 1978); *id.* §§ 712-1240(2), -1246. Under current law it is a class C felony, *id.* §§ 712-1240(1), -1243; *id.* § 329-16(d)(4) (Supp. 1979). Promoting a detrimental drug in the first degree is and was a class C felony. *Id.* § 712-1247(1)(e) (1976).

which in turn led to the second warrant. Thus, the State asserts that, even if the consent search were invalid, the exclusionary rule should not apply under the circumstances. We agree with the State's last proposition of law and affirm the convictions.

## I.

The facts concerning consent to enter the defendant's house are in dispute, but the antecedent and subsequent events are not. At about seven o'clock in the morning of November 13, 1974, an occupant of the defendant's house, Paul Brighter, telephoned the Kona Police Station and, after identifying himself as Richard Tavares, stated that David Brighter's house in Kona Palisades Subdivision was surrounded by guys with guns, or words to that effect. Between six and eight police officers, some of them in plainclothes, were dispatched to defendant's house.

Officer Stewart Dela Cruz was the first to arrive at the house. He spoke to Paul Brighter who said that the persons with guns had left and everything was all right. Officer Dela Cruz related this information to Officers Ronald Aguiar and Ronald Manuela, who had arrived at the scene shortly after Officer Dela Cruz. These two officers observed that there were no other persons surrounding the defendant's house and decided to investigate further to negate the possibility that persons reportedly armed had entered the house and were holding its occupants as hostages. Officers Aguiar and Manuela were met at the door of defendant's house by a person who identified himself as Richard Tavares. Their testimony conflicts on what followed next.

Officer Manuela testified that Tavares said he had seen people with rifles in the bushes in the hills and one armed person on the patio area of a house under construction on one hill. Tavares then confirmed that everything was all right. The officers asked Tavares for permission to enter the house. He refused. After the officers reiterated the importance of checking the house for potential hostages or injured persons, Tavares stepped toward the door frame. The officers pushed open the door and entered.

Richard Tavares denied that the officers asked for permission to enter the house and did not recall a conversation about the gunmen. His version is that Officer Manuela asked to see Paul Brighter, and

Tavares told him to wait. As Tavares began to close the partially open door, he stepped toward the jamb; when the door was nearly closed, Officer Manuela "pushed the door in, came in, and hit me on the chest."

The officers went through the kitchen, living room, bathroom, and three bedrooms, finding nothing unusual. Upon returning to the living area, Officer Manuela was conversing with another occupant, Andrew Versola, when he observed in plain view what appeared to be marijuana leaves in an ashtray, two dry stalks of marijuana, and various drug-related paraphernalia.

At about this time, Officer Dela Cruz, who had been checking the grounds around the house for "guys with guns," informed Officer Manuela that he had observed marijuana plants to the rear of the defendant's residence. Officers Manuela and Aguiar went outside where they found approximately forty to fifty marijuana plants in a vacant lot adjacent to a rock wall which marked the edge of the defendant's premises.

The officers returned to defendant's house and arrested occupants Tavares and Versola for investigation. Shortly thereafter, a frightened Paul Brighter was found hiding in the attic and also was placed under arrest. The defendant, however, was not at home.

Based on the affidavit detailing the events of the morning, a search warrant was issued in the late afternoon, authorizing a search of the defendant's house, garage, and surrounding grounds. Police officers executed this warrant on the morning of November 14, 1974, and seized marijuana and related paraphernalia. During the course of the search, Sergeant Robert Henriques observed a portion of a marijuana plant protruding from a Pan American flight bag located within a Chevrolet van registered to David Brighter and parked in the defendant's garage.[2] That same day a search warrant for the van was secured and executed. Pursuant to the second warrant, phencyclidine, also known as PCP, and marijuana were seized from the van.

---

[2] A considerable amount of testimony at the suppression hearing focused on whether the contraband or flight bag could be seen from outside the van; police officers presented potentially conflicting testimony on the issue. Defendant has not addressed this point on appeal and neither do we.

The trial court denied the defendant's motion to suppress the evidence seized during the execution of the search warrants for his house and van. On May 10, 1976, the court found David Brighter guilty of unlawfully possessing more than 2.2 pounds of marijuana and of unlawfully possessing phencyclidine.

## II.

Our discussion begins with the house search during which Officer Manuela viewed marijuana and smoking paraphernalia in the living room. The Fourth Amendment does not proscribe the observation of objects in plain view so long as the police officer is legally in a position to make the observations. *State v. Kaaheena,* 59 Haw. 23, 28 & n.5, 575 P.2d 462, 466 & n.5 (1978). Thus, the initial warrantless entry is potentially critical, and the defendant sought to prove that it violated his Fourth Amendment rights. To justify the house search, the government invoked the exception to the requirements of a warrant and probable cause that exists when a search is conducted pursuant to consent. *United States v. Mendenhall,* 100 S.Ct. 1870 (1980); *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973); *State v. Patterson,* 58 Haw. 462, 571 P.2d 745 (1977).

Because this case involved third-party consent, our analysis would address two issues: First, did Richard Tavares have the capacity to waive defendant's Fourth Amendment rights; and, second, did the actions of Richard Tavares constitute consent, assuming that he could waive defendant's rights. The threshold issue of third-party authority to consent was not raised by the parties below and has not been briefed on appeal.[3] In addition, the trial court made no find-

---

[3] Voluntary consent of a third party is effective to waive the rights of a defendant where it is shown "that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974) (footnote omitted); United States v. Botelho, 360 F. Supp. 620 (D. Haw. 1973). *Cf.* State v. Matias, 51 Haw. 62, 68 451 P.2d 257, 261 (1969) (valid waiver of fourth amendment right occurs "only by word or deed or through an agent"). *Compare* United States v. Hendrix, 595 F.2d 883, 885 (D.C. Cir. 1979) (wife's consent to search house valid despite defendant-husband's objection to the search), *and* People v. Sproul, 3 Cal. App. 3d 154, 83 Cal. Rptr. 55 (1969) (joint occupant of property on

ings of fact on denying the motion to suppress.[4] Because of the inadequacy of the record before us, we decline to rule on the validity of the consent search.

Under the circumstances, however, the constitutionality of the warrantless house search is not dispositive. This would not be true if the observations of Officer Manuela while inside defendant's house were the only facts submitted in the affidavit supporting the first warrant. As we said in *State v. Boynton*, 58 Haw. 530, 535, 574 P.2d 1330, 1334 (1978), "[a] subsequent search even under warrant based upon the evidence obtained in the former tainted search is also tainted." But the exclusionary rule does not preclude the use of evidence derived from knowledge of incriminating facts "gained from an independent source." *Silvertorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920). *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *Costello v. United States*, 365 U.S. 265, 280 (1961); *Nardone v. United States*, 308 U.S. 338, 340 (1939). Where the independent information is gained prior to the illegal search, the resulting evidence is not suppressed. *Peterson v. United States*, 411 F.2d 1074, 1078-79 (8th Cir.) *cert. denied*, 396 U.S. 920 (1969).[5]

In this case, the affidavit supporting the first warrant contained the information that police officers had seen growing marijuana in the vacant lot adjacent to defendant's house. Defendant does not

---

premises at time police arrived gave valid third-party consent), *with* United States v. Harris, 534 F.2d 95 (7th Cir. 1976) (third party lacked authority to consent to search of defendant's apartment where party did not have key, knew defendant only three weeks, and had been left alone in apartment only once), *and* United States v. Heisman, 503 F.2d 1284, 1287-89 (8th Cir. 1974) (cotenant of commercial building gave invalid consent to search defendant's room to which he had no access), *and* State v. Evans, 45 Haw. 622, 631, 372 P.2d 365, 371-72 (1972) (wife may not consent to search of her husband's cuff link case in bedroom bureau drawer).

[4] The proceedings in this case were conducted pursuant to the Hawaii Rules of Criminal Procedure, which did not expressly mandate the trial court to record its findings of fact. H.R.Cr.P. 12(b)(4), 41(e) (1960). The current rules require that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." H.R.P.P. 12(e).

[5] The Eighth Circuit also has held that the exclusionary rule does not preclude subsequent discovery under the rules of civil procedure to obtain the same information retrieved from an illegal search on the grounds that the opportunity for discovery is "available . . . without resort to any clue or knowledge gained from the items unlawfully seized." Standard Oil Co. v. Iowa, 408 F.2d 1171, 1177 (8th Cir. 1969).

assert a constitutional bar to the grounds check which occurred except insofar as it was provoked by and therefore derived from the discovery of contraband inside the house. The uncontradicted testimony of police officers at the hearing on the motion to suppress compels the conclusion that Officer Dela Cruz discovered the growing marijuana without knowledge of the incriminating evidence obtained during the house search. Indeed, the observations of incriminating evidence made by Officers Dela Cruz and Manuela took place simultaneously. Therefore, the evidence obtained by each officer was independent of the actions of the other. There was no basis for suppressing the evidence of the growing marijuana found in the vacant lot.

### III.

Even if the consent search was unconstitutional, the evidence of growing marijuana found outside the house was not thereby tainted. Moreover, it is well established that a search warrant is not constitutionally defective because it is based, in part, on illegally seized evidence where sufficient probable cause exists to issue the warrant without relying on the suppressed evidence. *State v. Lane,* 271 S.C. 68, 245 S.E.2d 114 (1978). Even if the observations of contraband and smoking paraphernalia are struck from the affidavit, the warrant will be upheld if the evidence of growing marijuana in the vacant lot constitutes probable cause to search the house, garage, and surrounding grounds. *See, e.g., United States v. Walker,* 575 F.2d 209 (9th Cir.), *cert. denied,* 439 U.S. 931 (1978); *State v. Diffenderfer,* 120 Ariz. 404, 586 P.2d 653 (Cr. App. 1978); *State v. Delaney,* 58 Haw. 19, 23, 563 P.2d 990, 993 (1977). We hold that it does.

Under the Fourth Amendment, probable cause is established when the facts warrant a person of reasonable caution to believe that a crime is being committed. This requires more than a mere suspicion but less than a certainty. *State v. Decano,* 60 Haw. 205, 209, 588 P.2d 909, 913 (1978). Where the facts and reasonable inferences from those facts are capable of supporting a finding of probable cause, the district court's decision to issue a search warrant will be upheld even though other inferences from those facts may support a different conclusion. *State v. Yaw,* 58 Haw. 485, 491, 572 P.2d 856, 860 (1977).

The relevant facts contained in the affidavit supporting the search warrant for defendant's house are set out in the margin.[6] In considering whether these facts give rise to a reasonable inference that marijuana could be found on defendant's premises, we are guided by the general preference to be accorded search warrants. *State v. Kaukani,* 59 Haw. 120, 126, 577 P.2d 335, 340 (1978). The question, then, is whether the existence of a marijuana patch, apparently under cultivation, establishes probable cause to search the adjacent property when two trails led from the patch to the property.

The decisions of other jurisdictions have found probable cause to issue search warrants based on facts closely analogous to the situation here. In *State v. Eutsler,* 41 N.C. App. 182, 254 S.E.2d 250 (1979), a path led directly from defendant's house to a marijuana patch located across the road. There were footprints on the path, and no other residents within a quarter mile (440 yards). An empty box with a military exchange price tag was found among the marijuana plants, and a check with the military revealed that the only military resident in the immediate vicinity lived in the house under suspicion. The court found probable cause to issue a search warrant

---

[6] That during a search of the surrounding grounds for the people with guns, there were observed two trails that led to the bushes in the rear of the home; that there was a stonewall dividing the said premises from a vacant lot covered with bushes; that there was an opening in the stonewall and a trail that led from the rear of the house through the stonewall to the vacant lot; that the trails (the second on the mauka side) led to the area where the marihuana plants were growing; that there were several trails in the bushes in the vacant lot, all of which led to the rear of the house;

That there was a water hose laid out on the ground where the marihuana was discovered with one end near the beginning of the trail by the stonewall; that there was also a water faucet in the back of the house with another water hose coiled nearby approximately . . . [unintelligible] feet from the beginning of the trail by the stonewall;

That the marihuana patch is located on the north side of the house herein described; that the nearest house, now under construction, is on the southeast side, about 100 yards more or less from said residence, and about 300 yards from the marihuana patch; that from the marihuana patch approximately 50 pounds of marihuana plants were recovered at approximately 9:30 a.m., November 13, 1974;

That your affiant has been informed that DAVID BRIGHTER, who is believed to be the person renting the said described home, was convicted on another charge of Promoting Detrimental Drugs in the First Degree on November 12, 1974, in the Third Circuit Court.

for the house. In the present case, there were two paths from defendant's house to the marijuana, one leading through a hole in the wall separating the property. The nearest other dwelling, still under construction, was about 300 yards from the marijuana patch.

In *Brooks v. State,* 140 Ga. App. 371, 231 S.E.2d 138 (1976), the defendant did not rent the farm land or barn in which cultivated and curing marijuana were found, respectively, but he did rent the adjacent house. The defendant had not been seen in the area where the marijuana was located; no marijuana was observed on the grounds of the rental house; and none was known to exist inside the house. The crucial link between the contraband and defendant's house was provided by a beaten path from the rental house to the barn and ultimately to the cultivated plants.

> This evidence of raw material and preparation for further use leads ineluctably to a reasonable conclusion that the finished product had a place of storage and distribution. The clearly defined paths between the known contraband and the house, [*sic*] furnish the answer as to the probable final repository of the finished product.

*Id.* at 372, 231 S.E.2d at 139.

Here, defendant's rented house is similarly linked to a substantial quantity of growing marijuana, giving rise to the same inferences which led the appellate court of Georgia to find probable cause for the warrant. *Accord, United States v. Miller,* 442 F.Supp. 742 (S.D. Me. 1977) (logical to assume smuggler would take bale of harvested marijuana found in the road into his nearby house). Identical results have been reached in several other cases based on the close proximity of apparently cultivated marijuana to the house, although in those cases the marijuana was located on the premises. *See, e.g., Houser v. Geary,* 465 F.2d 193, 196 (9th Cir. 1972) (marijuana in hothouse provides probable cause to search at least the main dwelling unit); *People v. Nelson,* 171 Cal. App. 2d 356, 360, 340 P.2d 718, 721 (1959) (single fact that marijuana was being grown in back yard would warrant inference that harvested plants would be found inside house) (dictum); *People v. Krug,* 38 Ill. App. 3d 383, 347 N.E.2d 807 (1976) (apparently cultivated marijuana in garden near house indicates cannabis would be in house).

Where the finding of probable cause has not been upheld, the affidavits either fatally omitted facts indicating that the marijuana

was under cultivation, rather than growing wild, *People v. Pellegrin,* 78 Cal. App. 3d 913, 144 Cal. Rptr. 421 (1977); *State v. Brown,* 2 Kan. App. 2d 379, 579 P.2d 729 (1978), or failed to link the close proximity of the plants to the defendant's house with sufficient facts to show that no other dwellings were within the same reasonable distance from the contraband. *Pellegrin, supra; State v. Morgan,* 376 So. 2d 99 (La. 1979). In this case, the supporting affidavit contained information sufficient to isolate defendant from other residents in the area who might have been growing the marijuana. The inference that the marijuana was under cultivation was warranted by the fact that a water hose was found in the patch only a short distance from another hose and water faucet located on defendent's premises.

We hold that the facts contained in the affidavit supporting the search warrant for defendant's house gave rise to reasonable inferences that defendant had ownership and control of the marijuana patch and that contraband would be found in his house. Because the information obtained to support these inferences was gained independent of the warrantless house search, we find that the search warrant for defendant's house meets the requirements of the Fourth Amendment even if we were to assume that the initial warrantless search was invalid. The piggyback warrant authorizing a search of defendant's Chevolet van, based on marijuana found in plain view during the execution of the first warrant, therefore passes constitutional scrutiny. Hence, the evidence seized from the van (PCP) was legally obtained. The trial court did not err in refusing to grant defendant's motion to suppress.

Affirmed.

*Rogers M. Ikenaga* for defendant-appellant.

*Glenn S. Hara,* Deputy Prosecuting Attorney, for plaintiff-appellee.