**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000094
23-FEB-2022
07:41 AM
Dkt. 184 SO**

NO. CAAP-20-0000094

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
CODY SAFADAGO, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO.  5CPC-17-172)

SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Wadsworth and Nakasone, JJ.)

Defendant-Appellant, Cody Safadago (**Safadago**) appeals from the Judgment of Conviction and Sentence; Notice of Entry, filed on January 27, 2020 by the Circuit Court of the Fifth Circuit (**Circuit Court**).[1]  The indictment charged Safadago with a number of offenses stemming from a fatal traffic collision involving a white Mazda sedan driven by decedent Kayla Huddy-Lemn (**Decedent**), and a white Nissan truck, allegedly operated by Safadago, near the intersection of Kapaʻa Bypass Road on Kuhio Highway, that occurred at around 10:00 p.m. on April 27, 2017.

Following a jury trial, Safadago was convicted of Manslaughter, Accidents Involving Death or Serious Bodily Injury (**Leaving Scene of Accident**), Unauthorized Control of a Propelled Vehicle (**UCPV**), Resisting Arrest, Operating a Vehicle Under the Influence of an Intoxicant, other driving-related offenses, and driving without a valid license.  The jury found Safadago eligible for extended term sentencing.  Safadago was sentenced to

---

[1]    The Honorable Randal G.B. Valenciano presided.

an extended life term of imprisonment with the possibility of parole for Manslaughter, an extended concurrent 20-year term of imprisonment for Leaving Scene of Accident, and concurrent terms of imprisonment and jail for all other counts except for UCPV, for which the ten-year extended term of imprisonment was to run consecutively.  Safadago timely appealed.[2]

On appeal, Safadago contends that the Circuit Court erred in denying (1) his Motion to Suppress All Evidence and Statements Based Upon Lack of Probable Cause to Arrest Defendant, filed on October 23, 2017 (**First Motion to Suppress**); (2) his Motion to Suppress Evidence Seized Pursuant to Search Warrants, Based Upon a Lack of Probable Cause, filed on October 23, 2017 (**Second Motion to Suppress**); (3) his two motions to dismiss the indictment:  the August 4, 2017 Motion to Dismiss Grand Jury Indictment (**First Motion to Dismiss Indictment**), and the October 23, 2017 Motion to Dismiss Grand Jury Indictment Due to Misleading Testimony, and/or Failure to Present Clearly Exculpatory Evidence (**Second Motion to Dismiss Indictment**).[3]

Upon review of the record on appeal and relevant legal authorities, giving due consideration to the issues raised and arguments advanced by the parties, we resolve Safadago's contentions as follows, and affirm.

---

[2]      A March 5, 2020 cross-appeal filed by the State was dismissed on August 4, 2020.

[3]      Safadago does not identify in his three points of error where in the record the alleged errors occurred, nor does he provide a quotation of the findings or conclusions alleged as error, nor did he append the Circuit Court's orders to his brief, in compliance with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4)(ii) and (4)(C).  However, as this required information missing from the point of error section appears in Safadago's Statement of the Case, we will consider his points of error.  Marvin v. Pflueger, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012) (internal citations, quotation marks, brackets, ellipses omitted) ("[N]oncompliance with Rule 28 does not always result in dismissal of the claims, and this court has consistently adhered to the policy of affording litigants the opportunity to have their cases heard on the merits, where possible. This is particularly so where the remaining sections of the brief provide the necessary information to identify the party's argument.").

Safadago did not file a Reply Brief, and did not file a notice that a reply brief would not be filed, pursuant to HRAP Rule 28(d).  See HRAP Rule 28(d) ("If no reply brief is to be filed, the appellant shall file a notification with the appellate clerk, with service upon all parties, prior to the expiration of the time for filing the reply brief.").

Safadago's counsel is cautioned to comply with HRAP requirements.

**The First Motion to Suppress was properly denied.**

Safadago contends that the Circuit Court erred in denying Safadago's First Motion to Suppress. He argues that Kauaʻi Police Department (**KPD**) Officer Michael Buratti's (**Officer Buratti**) seizure of Safadago was unconstitutional because Officer Buratti did not have a reasonable suspicion to detain Safadago pursuant to State v. Tominiko, 126 Hawaiʻi 68, 77, 266 P.3d 1122, 1131 (2011).[4] Safadago argues that Tominiko is identical to Safadago's case in that: Safadago was already walking away when Officer Buratti called out to him, Safadago began running, Officer Buratti gave chase, and Safadago slowed to walk as Officer Buratti asked Safadago if it was his truck. This contention lacks merit.

The following record pertinent to both the First and Second Motions to Suppress is from the hearing on the motions held on December 12, 2017 and January 19, 2018, and the Circuit Court's identical, unchallenged findings of fact in the Findings of Fact and Conclusions of Law (**FOFs/COLs**) in the order denying the First Motion to Suppress and the order denying the Second Motion to Suppress. See State v. Rodrigues, 145 Hawaiʻi 487, 497, 454 P.3d 428, 438 (2019) (citation omitted) ("It is well-

---

[4]      In Tominiko, a police officer testified that he was dispatched to investigate a tip that a group of people were arguing at an intersection. 126 Hawaiʻi at 72, 266 P.3d at 1126. When the officer arrived to the intersection, fifteen to twenty people were drinking beer or soda and quickly dispersed. Id. As the defendant walked to his car, the officer asked for his identification to investigate what was going on at the intersection. Id. The defendant mumbled something, got into his car and the officer told the defendant to stop; the defendant drove off and the officer chased after him, telling him to stop. Id. A vehicle coming in the opposite direction forced the defendant to stop. Id. The officer then saw empty beer bottles in the car, and the defendant was charged with operating a vehicle under the influence of an intoxicant. Id. The Hawaiʻi Supreme Court held that the officer did not have a reasonable suspicion to arrest the defendant because the officer did not have a particularized and objective basis for suspecting that the defendant had committed, or was about to commit, a crime. Id. at 78, 266 P.3d at 1132. The officer did not recall seeing the defendant drinking beer or holding a beer bottle in his hand when the officer approached, and did not see the defendant fighting or talking loud. Id. The officer did not see the defendant or anyone in the group fighting or arguing. Id. The defendant's walk to his car also did not raise reasonable suspicion that he committed a crime. Id. at 79, 266 P.3d at 1133. Thus, based on the totality of the circumstances, the supreme court held that the officer did not have a reasonable suspicion that the defendant committed a crime. Id.

established that . . . unchallenged findings of fact are binding on appellate courts.").

On April 27, 2017, at approximately 10:45 p.m., a traffic collision occurred between a stolen Nissan truck and a Mazda four door car.  FOF 1.  The collision happened just North of Kintaro's in Kapaʻa, Hawaiʻi.  FOF 2.  The driver of the Mazda, Kayla Huddy-Lemn, died shortly after the collision but before being extricated from the vehicle.  FOF 3.  When Officer Buratti arrived on scene he went to the location of the Nissan truck.  FOF 4.  Officer Buratti heard a loud verbal argument in the parking lot area of JC's Flower, a retail establishment adjacent to Street Burger.  FOF 5.  Officer Buratti testified that as he exited his vehicle, he heard "at least one and possibly two voices yelling that this guy came from that truck."

As Officer Buratti approached the group of four individuals, a man, later identified as Safadago, turned around, looked at Officer Buratti, and started to run, barefoot, on the sidewalk fronting Street Burger.  Officer Buratti asked one of the men in the group, later identified as Aaron Leikam (**Leikam**), the owner of Street Burger, if Safadago was "the guy from [the] truck," to which Leikam responded, "Yeah, I think so."  As Safadago ran away, Officer Buratti yelled for Safadago to stop, but Safadago did not comply.  FOFs 8, 9.  Based on the information from Leikam, Officer Buratti pursued Safadago, chasing him to a pump station at the intersection of Haleilio Road and Kuhio Highway, and stopping when Safadago ran up against a fence.  Officer Buratti repeatedly ordered Safadago to get down on the ground.  Officer Buratti asked Safadago, "Is that your white truck?"  Safadago denied owning the truck.  When Officer Buratti repeated his order for Safadago to get on the ground, Safadago said, "Fuck you," and took a belligerent stance.  Officer Buratti again ordered Safadago to get on the ground.  When Safadago did not comply, Officer Buratti told Safadago that he was under arrest, and tackled Safadago to the ground.  When Officer Shawn Hanna (**Officer Hanna**) arrived, he handcuffed

Safadago, who was then placed in the back of a squad car while the officers continued their investigation.

In its Order Denying the First Motion to Suppress filed February 4, 2019, the Circuit Court concluded that pursuant to HRS § 803-4,[5] "Officer Buratti had a reasonable suspicion to believe that the Defendant was the offender because the Defendant was in the area where the crime was committed and was endeavoring to escape."

"An appellate court reviews a ruling on a motion to suppress de novo to determine whether the ruling was 'right' or 'wrong.'" State v. Weldon, 144 Hawaiʻi 522, 530, 445 P.3d 103, 111 (2019) (quoting Tominiko, 126 Hawaiʻi at 75, 266 P.3d at 1129). Conclusions of law are freely reviewable on appeal, under the right/wrong standard. Birano v. State, 143 Hawaiʻi 163, 181, 426 P.3d 387, 405 (2018) (citations omitted). In reviewing whether a seizure was unconstitutional, an appellate court must determine "1) whether the person was seized; and 2) whether the seizure was justified." Tominiko, 126 Hawaiʻi at 77, 266 P.3d at 1131 (citing State v. Dawson, 120 Hawaiʻi 363, 369, 205 P.3d 628, 634 (App. 2009)). "'[T]he police may temporarily detain an individual if they have a reasonable suspicion based on specific and articulable facts that criminal activity is afoot.'" Id. (quoting State v. Kearns, 75 Haw. 558, 569, 867 P.2d 903, 908 (1994)). "The ultimate test in these situations must be whether from these facts, measured by an objective standard, a [person]

---

[5]    HRS § 803-4 (2014) provides for a warrantless arrest upon reasonable suspicion:

> Whenever a crime is committed, and the offenders are unknown, and any person is found near the place where the crime was committed, either endeavoring to conceal oneself, or endeavoring to escape, or under such other circumstances as to justify a reasonable suspicion of the person being the offender, the person may be arrested without warrant.

See also State v. Keawe, 107 Hawaiʻi 1, 5-7, 108 P.3d 304, 308-10 (2005) (relying on HRS § 803-4 to provide context to the HRS § 803-5 warrantless arrests exception, which allows "warrantless arrests where the police observe a crime in progress or have probable cause to believe a crime has just occurred," and recognizing that HRS § 803-4 enables an HRS § 803-5 warrantless arrest when a crime is in progress, or has just occurred, and an individual is found hiding near a crime scene.).

of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate." Id. at 78, 266 P.3d at 1132 (emphasis and citations omitted). Based on the totality of circumstances, the detaining officers "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Id. (emphasis omitted) (quoting State v. Koanui, 3 Haw. App. 255, 258, 649 P.2d 385, 387 (1982)).

Here, the record reflects that Officer Buratti had a reasonable suspicion to detain Safadago based on specific and articulable facts that Safadago came from a truck involved in a fatal traffic collision and that he had left the scene. See Tominiko, 126 Hawaiʻi at 77-78, 266 P.3d at 1131-32. These specific facts included: the traffic collision, another vehicle reportedly involved but no longer at the scene of the collision, the discovery of the truck, the argument at the truck with yelling that a male had come from the truck, Safadago then fleeing from Officer Buratti, Leikam's response that he thought Safadago came from the truck. Viewed in totality, these facts constituted reasonable suspicion to justify Officer Buratti's seizure of Safadago. See id.

"[F]light from the police is a factor which may support a finding of probable cause." State v. Melear, 63 Haw. 488, 494, 630 P.2d 619, 625 (1981). HRS § 803-4, which the Circuit Court applied, also provides for the warrantless arrest of a person "found near the place where the crime was committed" who is "endeavoring to escape," in situations where the "offenders are unknown." See Keawe, 107 Hawaiʻi at 5-7, 108 P.3d at 308-10. Here, the officer had information that Safadago was associated with a vehicle that had left the scene of a collision, Safadago ran from the officer, and also failed to stop despite multiple instructions to do so. Safadago also resisted Officer Buratti's repeated orders to get on the ground and took a belligerent physical stance. Safadago's flight from Officer Buratti, in addition to the other circumstances discussed supra, which justified the seizure of Safadago, also supported the warrantless

arrest under HRS § 803-4.  See Melear, 63 Haw. at 494, 630 P.2d at 625.  We conclude that the Circuit Court did not err in denying the First Motion to Suppress.  See Weldon, 144 Hawaiʻi at 530, 445 P.3d at 111.

**The Second Motion to Suppress was properly denied.**

Safadago contends that the Circuit Court erred in denying Safadago's Second Motion to Suppress because Search Warrants P-17-53 and P-17-56, which led to the securing of Safadago's blood and DNA, did not constitute probable cause because the officers "fabricate[d] and falsif[ied] circumstances" in their affidavits supporting the warrants.  Specifically, Safadago claims that the officers erroneously stated that Safadago was identified by one of the bystanders as the driver of the truck, and that because of this misstatement, the remainder of the affidavits could not support a finding of probable cause.

KPD Officer Joseph Himongala's (**Officer Himongala**) affidavit in support of search warrant P-17-53 requesting a blood draw of Safadago, stated:

> Officer Michael BURATTI arrived at the scene and parked his marked patrol vehicle in front of the suspect's vehicle. As he got out of his vehicle, a verbal argument caught his attention in front of the JC Flower Store.  Officer Michael BURATTI observed a total of four people in front of the stated store.  As Officer Michael BURATTI approached them, they identified one of the subjects that were with them as the driver of the vehicle KBJ-403.  As Officer Michael BURATTI attempted to make contact with the driver (suspect), he began to run towards the Shell Gas Station.  Officer Michael BURATTI chased the suspect and apprehended him at the Shell Gas Station.
>
> . . . .
>
> Your affiant arrived at the scene and inspected the suspect's vehicle and made contact with Cody SAFADAGO. Your affiant observed a blood stain on the carpet located on the right side of the gas pedal.  Your affiant also observed a blood stain on the driver's side door panel. The suspect's vehicle's steering wheel airbag had been deployed.  Cody SAFADAGO sustained cuts on both legs and they were bleeding. Cody SAFADAGO also has redness on both of his arms.  Based on your affiant's training and experience, Cody SAFADAGO's injuries were consistent with the evidence observed in the vehicle KBJ-403.  While your affiant was in the process of obtaining the telephonic search warrant, your affiant learned that the victim later died at Wilcox Memorial Hospital.

(Emphases added).

At the hearing on the motion, Officer Himongala testified that he took Safadago outside of the patrol vehicle to examine Safadago's injuries on his body to determine if the injuries were consistent with the damage within the truck. Officer Himongala observed that Safadago had redness on his arms, bleeding on his legs, and bleeding on his face; the blood on Safadago was consistent with a fresh injury. When Officer Himongala inspected the truck, he observed bloodstains on the floor of the truck, next to the gas pedal, and on the driver door. The truck sustained damage to the bottom dashboard, and the firewall was pushed in towards the driver's side of the truck. Based on what he observed, Officer Himongala determined that Safadago's injuries were consistent with the damage to the truck and the bloodstains inside the truck.

Officer Himongala did not include any information of Safadago being taken down and arrested by Officer Buratti in the affidavit, because Officer Himongala felt those facts were irrelevant to include in the warrant. Officer Himongala testified that at the scene of the collision, Officer Buratti told Officer Himongala that "nobody . . . can place [Safadago] inside the [truck]." While writing up the warrant, Officer Himongala contacted Officer Buratti via telephone to verify that the witness (Leikam) identified Safadago as the driver of the truck. Officer Himongala testified that there was a misunderstanding between him and Officer Buratti over whether Leikam identified Safadago as the driver of the vehicle.

Officer Hanna's affidavit in support of search warrant P-17-56, requesting a buccal swab of Safadago's saliva for DNA, stated:

- Officer M. Burratti had apprehended a male subject, Cody SAFADAGO, . . . who was identified as the operator of UNIT 01.

  . . . .

Based on initial investigation, your affiant concluded the following:

- Prior to the collision, UNIT 01 was southbound on Kuhio Hwy and UNIT 02 was northbound.

- UNIT 01 crossed the double solid yellow line and struck UNIT 02 head on, off center to the driver side of each.

- UNIT 02 was spun around and came to a stop in the northbound lane facing south.

- UNIT 01 continued on Kuhio Hwy with a damaged driver front wheel which became detached and caused the vehicle to slide to a stop at the Lanikai junction.

- <u>Cody SAFADAGO was the operator of UNIT 01</u>.

- <u>SAFADAGO's injuries were consistent with having operated UNIT 01 at the time of the collision</u>.

- <u>There were blood spots within UNIT 01 corresponding to SAFADAGO's injuries and the airbag deployment corresponded to marks on his forearms</u>.

- Kayla HUDDY-LEMN was the operator of UNIT 02

- HUDDY-LEMN was injured and died as a result of this collision.

- There were no other occupants in either vehicle at the time of the collision.

(Emphases added).  Officer Hanna's affidavit requested a DNA sample from Safadago to compare it to the "DNA profiles obtained from the evidence within UNIT 01 to determine if SAFADAGO'S DNA is present inside UNIT 01."  An attachment accompanying Officer Hanna's affidavit also described Officer Hanna's extensive training and experience in the investigation of fatal and non-fatal traffic collisions, and his evidence-gathering and crime scene processing experience.

Officer Hanna testified that when he first approached the scene, Officer Buratti was on top of Safadago, who was pinned on the ground, near the pump station.  Officer Hanna assisted with the arrest by handcuffing and getting Safadago off the ground and escorting him to another officer's vehicle.  Officer Buratti informed Officer Hanna that Officer Buratti did not have an eyewitness to identify the driver of the truck.

Officer Hanna testified that he, his sergeant, and Officer Himongala conducted an investigation of the truck by

looking through the driver's side door, which was ajar. Blood was on the carpet and on the center console on the driver's side compartment. Officer Hanna noted Safadago's injuries, which consisted of scuffs on the inside of his forearms indicative of a front air bag deployment; minor cuts under his knees; leg compression lacerations; a cut or bruising above his eyes. Officer Hanna, the sergeant, and Officer Himongala discussed the injuries to Safadago that would indicate that he was the driver, including the air bag abrasions and the cuts under Safadago's knees as being consistent with the damage to the truck. Officer Himongala was then instructed to obtain a search warrant for the blood draw of Safadago, and Officer Hanna obtained the search warrant for the buccal swab of Safadago's saliva for DNA.

In its Order Denying the Second Motion to Suppress filed February 4, 2019, in addition to the factual findings <u>supra</u> regarding Safadago being identified as having come from the truck involved in the collision, the Circuit Court concluded that:

> 11. The police determined that the Defendant's injuries were consistent with having been the driver of the vehicle in question.
>
> 12. There was sufficient probable cause to believe that the Defendant was the driver of the vehicle in question.
>
> 13. This probable cause was sufficient to justify the issuance of Search Warrant No. P-17-53 by Officer Himongala and Search Warrant No. P-17-56 by Officer Hanna.

The Circuit Court's conclusions relied upon the police determination that Safadago's injuries "were consistent with having been the driver" of the truck, for its probable cause determination.

An appellate court reviews "'the determination of probable cause for the issuance of a search warrant' under the <u>de novo</u> standard of review." <u>State v. Quiday</u>, 138 Hawaiʻi 124, 127, 377 P.3d 65, 68 (App. 2016) (quoting <u>State v. Detroy</u>, 102 Hawaiʻi 13, 18, 72 P.3d 485, 490 (2003)). A misstatement of fact will not automatically render a search warrant affidavit insufficient

to establish probable cause, if the remainder of the affidavit is still sufficient to establish probable cause.  State v. Sepa, 72 Haw. 141, 144, 808 P.2d 848, 850 (1991).[6]

> An affidavit which misstates material facts hinders the judicial officer's inference-drawing powers and increases the likelihood that privacy will be invaded without probable cause.  Therefore, once a defendant establishes that an affidavit supporting a search warrant contains material misstatements of fact, the reviewing court must determine whether the affidavit's content, with the false material omitted, is sufficient to establish probable cause.

Id. (citations omitted).  Further, "[w]here the facts and reasonable inferences from those facts are capable of supporting a finding of probable cause, the district court's decision to issue a search warrant will be upheld even though other inferences from those facts may support a different conclusion." State v. Brighter, 63 Haw. 95, 101, 621 P.2d 374, 379 (1980) (citing State v. Yaw, 58 Haw. 485, 491, 572 P.2d 856, 860 (1977)).

Here, the misstatement in Officer Himongala's affidavit -- that Safadago had been identified as the driver -- did not render the entire affidavit incapable of establishing probable cause.  If this misstatement is omitted, the remainder of Officer Himongala's affidavit -- describing his observations of Safadago's injuries as consistent with the blood stains in the truck and the deployed steering wheel airbag -- was sufficient to establish probable cause.  See Sepa, 72 Haw. at 144, 808 P.2d at 850; Brighter, 63 Haw. at 101, 621 P.2d at 379.

Similarly, with regard to Officer Hanna's affidavit, the misstatement that Safadago "was the operator" of Unit 01, did not render the entire affidavit incapable of establishing probable cause.  If this misstatement is omitted, the remainder of Officer Hanna's affidavit -- which describes the collision

---

[6]     In Sepa, the supreme court omitted misstated facts regarding a narcotic dog's sniff test alert of a mail parcel, and determined that the remainder of the search warrant affidavit did not establish probable cause because all that remained in the affidavit were the dimensions of the parcel and the qualifications of the narcotic dog and its police officer handler.  72 Haw. at 144, 808 P.2d at 850.

scene, the placement of the truck and the Mazda, how the head-on collision occurred, and the officer's observations of the truck "blood spots" and airbag deployment corresponding to Safadago's injuries -- was sufficient to establish probable cause. See Sepa, 72 Haw. at 144, 808 P.2d at 850; Brighter, 63 Haw. at 101, 621 P.2d at 379.

At a suppression hearing, the trial court, as fact-finder, is to "assess credibility of witnesses . . . and to resolve all questions of fact." State v. Nelson, 69 Haw. 461, 468-69, 748 P.2d 365, 370 (quoting Lono v. State, 63 Haw. 470, 473, 629 P.2d 630, 633 (1981)). "The [court as] trier of fact may draw all reasonable and legitimate inferences and deductions from the evidence adduced . . ., and findings of the trial court will not be disturbed unless clearly erroneous." Id. at 469, 748 P.2d at 370 (internal quotation marks and citation omitted). The Circuit Court's COL 11, that the "police determined that the Defendant's injuries were consistent with having been the driver of the vehicle in question," is actually a finding of fact; we conclude that this finding was supported by substantial evidence and not clearly erroneous. See Birano, 143 Hawaiʻi at 181, 426 P.3d at 405 (reviewing factual findings under clearly erroneous standard). The Circuit Court's subsequent conclusions in COLs 12 and 13, concluding that there was thus "sufficient probable cause to believe that Defendant was the driver of the vehicle in question" and that the search warrants were justified, were not erroneous. See Sepa, 72 Haw. at 144, 808 P.2d at 850; Brighter, 63 Haw. at 101, 621 P.2d at 379; Birano, 143 Hawaiʻi at 181, 426 P.3d at 405. We conclude that the Circuit Court did not err in denying the Second Motion to Suppress. See Weldon, 144 Hawaiʻi at 530, 445 P.3d at 111.

**The Motions to Dismiss Indictment were properly denied.**

Safadago contends that the Circuit Court abused its discretion in denying (1) Safadago's First Motion to Dismiss Indictment, and (2) Second Motion to Dismiss Indictment.

A motion to dismiss indictment is reviewed on appeal for an abuse of discretion.  State v. Pitts, 146 Hawaiʻi 120, 129, 456 P.3d 484, 493 (2019) (quoting State v. Akau, 118 Hawaiʻi 44, 51, 185 P.3d 229, 236 (2008)).  A grand jury proceeding "'is an ex parte investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person.'"  State v. O'Daniel, 62 Haw. 518, 520, 616 P.2d 1383, 1386 (1980) (quoting State v. Bell, 60 Haw. 241, 244, 589 P.2d 517, 519 (1978)).  "The prosecutor has wide discretion in selecting and presenting evidence before the grand jury."  Id. (citations omitted).  "'[W]here evidence of a clearly exculpatory nature is known to the prosecution, such evidence must be presented to the grand jury.'"  Bell, 60 Haw. at 245, 589 P.2d at 520; Hawaiʻi Rules of Penal Procedure Rule 6(f) ("[E]vidence of a clearly exculpatory nature known to the prosecution shall be disclosed to the grand jury.").  However, "the prosecution is not required to present all exculpatory evidence to the grand jury" and has "considerable latitude in determining whether to present evidence of an arguably exculpatory nature to the grand jury." Bell, 60 Haw. at 246, 589 P.2d at 520-21.

### 1. First Motion to Dismiss Indictment

With regard to the First Motion to Dismiss Indictment, the Circuit Court made the following Conclusions of Law in its order denying the motion:

> 9.    The statement by the "Unnamed Witness," [Leikam] although hearsay under Hawaii Rules of Evidence (hereinafter "HRE") Rule 801, falls within the "State of Mind" exception under HRE Rule 803(b)(3).
>
> 10.   The statement by Unnamed Witness was presented because it informed the Grand Jury as to why Officer Buratti gave chase to the Defendant.
>
> 11.   Excessive hearsay was not presented to the Grand Jury sufficient to dismiss the Indictment.

Safadago does not challenge COL 9 regarding the admission of the "unnamed" witness (Leikam) hearsay statement at the grand jury hearing under a hearsay exception.  Instead, Safadago argues that Leikam's statement

13

> was not enough to furnish probable cause for [Safadago's]
> arrest, and therefore evidence of Officer Hanna's supposed
> observations of injuries of [Safadago], which led him to
> conclude on the spot that they were sustained specifically
> from having driven the white truck during the collision,
> should have been suppressed and therefore not considered at
> all in sustaining the Grand Jury Indictment. Combined with
> the lack of probable cause supporting the issuance of the
> two search warrants, there is no possible way the Grand Jury
> could have returned a true bill . . . .

The above is the extent of Safadago's argument regarding the denial of First Motion to Suppress in the Opening Brief.

Officer Hanna's observations of Safadago's injuries were not subject to suppression and were accordingly presented to the grand jury. We have already determined <u>supra</u>, that the Circuit Court's order concluding there was sufficient probable cause to support the issuance of the two search warrants and denying Safadago's motion to suppress, was not erroneous. Accordingly, Safadago's argument above, as we discern it, is without merit. We conclude that the Circuit Court did not abuse its discretion in denying Safadago's First Motion to Dismiss Indictment. <u>See</u> <u>Pitts</u>, 146 Hawai‘i at 129, 456 P.3d at 493.

**2. Second Motion to Dismiss Indictment**

With regard to the Second Motion to Dismiss Indictment, Safadago argues that the Circuit Court abused its discretion in not dismissing the indictment despite the Circuit Court finding that the State did not put on evidence that: (1) Safadago was not seen in the truck; (2) that four individuals were seen standing outside of the truck after the collision; and (3) the four individuals were not seen in the truck. Safadago argues that these facts were clearly exculpatory because they negated identification of Safadago as the driver of the truck, and "such evidence, if presented could have resulted in a no bill on the charges."

The Circuit Court denied the Second Motion to Dismiss the Indictment, specifically finding and concluding that:

> [Findings of Fact]
>
> 2.    During the Grand Jury proceedings, the State
> of Hawaii did not put on evidence . . . that the

Defendant was not seen in the [truck] or that four individuals were seen standing outside of the truck after the collision.

3.   The State of Hawaii did not put on evidence that the other four individuals were not seen in the truck.

4.   The State of Hawaii did put on evidence that the Defendant was seen running from the scene of the collision.

5.   The State of Hawaii did put on evidence that the Defendant's injuries were consistent with having been the driver of the vehicle in question.

. . . .

[Conclusions of Law]

8.   The State of Hawaii did not improperly mislead the Grand Jury.

9.   The evidence that the Defendant was not seen driving the vehicle in question was not clearly exculpatory.

10.   The evidence that there were four individuals standing outside of the vehicle in question after the collision, also not seen driving the vehicle in question, was not clearly exculpatory evidence.

11.   The State of Hawaii did not fail to present clearly exculpatory evidence.

Evidence that is "clearly" exculpatory is evidence that "clearly would have negated guilt" or would "undermine the authority of the grand jury to act at all." State v. Wong, 97 Hawaiʻi 512, 526, 40 P.3d 914, 928 (2002) (quoting Bell, 60 Haw. at 247, 589 P.2d at 521).   Here, the evidence that Safadago was not seen inside the truck, and that four others were standing outside of the truck, does not clearly negate Safadago's guilt. See id.   Safadago's argument itself acknowledges that this evidence shows only "the possibility of someone else, other than [Safadago]," being the driver.[7]   (Emphasis added).   The Circuit

_____

[7]   In the Opening Brief, Safadago argues:

The fact that the witness actually did not see [Safadago] behind the wheel, or even in the vehicle should have been presented.   Moreover, the fact that there was the possibility of someone else, other than [Safadago], driving the vehicle should also have been presented because it

(continued...)

Court's conclusions in this regard were not wrong, and its denial of the Second Motion to Dismiss Indictment was not an abuse of discretion. See Pitts, 146 Hawaiʻi at 129, 456 P.3d at 493; Birano, 143 Hawaiʻi at 181, 426 P.3d at 405.

For the foregoing reasons, the Judgment of Conviction and Sentence; Notice of Entry, filed on January 27, 2020 by the Circuit Court of the Fifth Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, February 23, 2022.

On the briefs:

Rosa Flores
(Law Office of Rosa Flores)
for Defendant-Appellant

Tracy Murakami
Deputy Prosecuting Attorney
County of Kauaʻi
for Plaintiff-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

---

[7](...continued)
negated identification, which is a material element of the offenses charged.  And, such evidence, if presented could have resulted in a no bill on the charges.

(Emphasis added).